JOHN NICHOLS ET AL. *v.* JONATHAN REYNOLDS ET AL.

By the terms of the statute relative to the recording of deeds, the lodging of a deed with the town clerk to be recorded, is equivalent to an actual entry of it upon record, and the title is made complete, and the neglect of the town clerk to record it cannot affect the grantee's rights under the deed.

A deed, though absolute upon the face of it, if it appear to have been given, and to have been treated by the grantee as given, as collateral security, is a mortgage.

If a deed has two objects, 1st, to secure the grantee for a debt, and 2d, to cover the grantor's property from the suits of other creditors, the first is legal, and the other fraudulent.

A mortgagee has a right to assign an equity of redemption, even though another mortgagee, claiming under the same title, be in actual possession of the premises.

The following principle, laid down in Starkie on Evidence, recognized and applied, viz. : " Where a party is in actual possession and has a right to possession, under a legal title which is not adverse, but claims the possession under another title which is adverse, the possession will not in law be deemed adverse."

THIS was a bill in equity, which prayed for an account of money due on mortgage, and for the redemption of mortgaged premises. The leading facts, as stated in the bill, are the following:

Abraham B. Rathbun, on the 20th day of February, 1813, was seized of two parcels of land in North Kingstown, and being seized thereof, on that day, by his deed in mortgage of that date, conveyed the same to Philip Tillinghast, John P. Case and Richard Thomas, as collateral security for their indorsing a note, or notes, for the said A. B. Rathbun, at the

Narraganset Bank. Afterwards, on the 2d day of April, 1816, in consideration that William Hammond had become indorser, in the place of John P. Case, the said Case assigned his right and interest, under said mortgage deed, to said Hammond. Afterwards, Joseph R. Tillinghast and Wilber Tillinghast, administrators on the estate of the said Philip Tillinghast (deceased), on the 19th day of September, 1820, in consideration that Jonathan Reynolds had become indorser on said note or notes, in the place of the intestate, assigned all the right and title of the intestate to said Reynolds. Afterwards, Pardon T. Hammond, Maria Champlin, Ruth F. Hammond, William G. Hammond, George Hammond, and Lydia H. Hammond, heirs at law of the said William Hammond, who had become indorser, as aforesaid, on the 2d day of February, 1828, in consideration of two hundred dollars paid by Joshua B. Rathbun, assigned to the said Rathbun all their right and title in the mortgaged premises. The said Abraham B. Rathbun, seized of the premises as aforesaid, on the 16th day of March, 1813, conveyed, by his deed in mortgage of that date, one of the parcels of land aforesaid to Sarah Steere ; and she afterwards, on the 1st day of March, 1826, assigned her right and interest in said mortgage to Samuel Thomas, Jr. ; and he, on the 12th day of February, 1827, assigned his right and interest to Richard Thomas.

The bill further represented, that the said Abraham B. Rathbun, on the 16th day of March, 1813, by his deed of warranty in fee simple, for a valuable consideration, conveyed the land mentioned in the first-mentioned mortgaged deed, to Elizabeth Peckham, and that afterwards, on the 19th day of February, 1825, she died intestate, seized and possessed of the premises; and that on her decease, John Hall and Patience Hall, his wife, Lydia M'Kenzie, Isaac C. Champlin and wife, and Benedict Peckham Eldred, became seized and pos-

sessed of the said premises as heirs at law of the said Eliza-
beth. And afterwards the said Benedict Peckham Eldred, on
the 7th day of February, 1826, by his deed of quitclaim of
that date, sold and granted to the said John Hall all the right
and interest which he then had in the estate of which the
said Elizabeth Peckham died seized; and afterwards, the
said Hall and wife, on the 25th day of January, 1833, by
their deed of quitclaim, remised and released unto John
Nichols, one of the complainants, all her right and title in
and to the afore-mentioned mortgage deed.

The bill prayed that the court would order and direct
subpœna to issue to the said Jonathan Reynolds, Richard
Thomas, and Joshua B. Rathbun, as would cause them
to come to a just account for the principal and interest of
said mortgages and the rents and profits of the said prem
ises, and by payment of what may be due them, that the
premises may be exonerated and discharged from the mort-
gages, or from their incumbrances, and possession thereof be
delivered to the complainants.

The separate answer of the defendant, Joshua B. Rathbun,
was substantially as follows : He admitted that the mortgage
deed of Abraham B. Rathbun, of the 20th February, 1813,
for the security of his indorsers, as above mentioned, and the
mortgage deed to Sarah Steere of the 16th March, 1813,
were for a valuable consideration, and that the said mortgages
were transferred and assigned as mentioned in the complain-
ant's bill; but whether the first-mentioned mortgage was
given as collateral security for an indorsement to the Narra-
ganset Bank, the defendant was ignorant. But the defend-
ant believed that, at the time of the alleged execution of the
deed in fee simple, set forth of the 16th of March, 1813, of
the said Rathbun to Elizabeth Peckham, the said Rathbun
was involved in debt beyond his ability to pay, and that he

was apprehensive that certain banks to whom he was indebted would levy process on his real estate ; and that he had put his personal estate into the hands of other persons colorably to prevent the same from attachment by his creditors, and to secure the use of the same for the benefit of himself and family ; and, for the purpose of protecting his real estate from his creditors, and securing the same to his own use, *fraudulently* executed the said deed to the said Elizabeth Peckham, his mother-in-law. That the said deed was carried by the said Rathbun to the office of the town clerk, and lodged by him, with directions that it should not be recorded, and that it was so lodged merely to prevent attachment by his creditors ; that the said Elizabeth was not present at the time of the execution of the deed, nor any person as her agent or attorney, to receive the same ; nor did she, nor any one on her behalf, pay any money, or deliver up any security therefor as a consideration ; although it was true that said Rathbun, before that time, was indebted to the said Elizabeth in the sum of about $300, by note or notes of hand, but which note or notes the said Elizabeth never gave up nor cancelled, but retained the same until the year 1817, when a new note, after deducting payments and adding interest, was given for about the sum of $400 ; and from 1817, the said Rathbun, by work and labor and articles sold and delivered, had, before the death of the said Elizabeth, paid a considerable part of said note, as would appear by the account annexed ; and that, since the death of the said Elizabeth, the said note had been sued by her heirs-at-law. That the said Rathbun, from the day of the date of said deed, in March, 1813, did, with the full knowledge of the said Elizabeth, continue in the actual possession of the premises described in said deed, for about ten years, cutting down, carrying away and selling the wood growing thereon, and planting the land, without inter-

ruption by the said Elizabeth, or the said deed being record-
ed, or being ordered by her to be recorded, or the demanding
by her of any rent; and that the said Elizabeth permitted the
said Rathbun to hold himself out to the public as the owner
of said estate.

The defendant further averred, that the said deed was not
recorded nor lodged to be recorded agreeably to the laws of
the state; nor was the entry on the back of said deed in the
handwriting of the clerk, and the deed was not recorded in
the regular course of recording deeds, and not until the 19th
of January, 1825, when the said John Hall procured it to be
recorded; and that, if the said Elizabeth had been in sound
mind and body, the said deed would not have been recorded;
and that the said Hall, before he had the same recorded, un-
derstood and had declared said deed to be only a *mortgage.*

The defendant further averred, that, on the 15th of April,
1823, the said A. B. Rathbun, in consideration of the sum of
$400, made and executed to the defendant a deed poll of the
lands described in the complainant's bill, which said deed was
duly recorded in the books of land evidence in said North
Kingstown; and that at the time of the execution of the deed
to the defendant, he had no notice of said pretended deed to
the said Elizabeth, and was wholly ignorant thereof, and that
said Rathbun had declared the said estate to be clear of all
incumbrances except the mortgages to the said Tillinghast,
Case and Thomas, and Sarah Steere. That the defendant,
upon the execution of the deed to him, entered into posses-
sion of the premises described therein, and has possessed the
same by himself, his tenants and mortgagees to that time.

The defendant further averred, that the said Eldred, at the
time of his quitclaim to John Hall, as set forth in complain-
ant's bill, was not in possession of the premises, nor was an
actual entry made by the grantor and grantee, or either of

them. That the said Hall and his wife, at the time of the execution of their deed of quitclaim, on the 25th January, 1833, to John Nichols, were not in the actual possession and seizure of the premises.

The defendant therefore submitted, that, upon the facts and under the circumstances, the complainants were not entitled to the relief prayed for; that the pretended deed to Elizabeth Peckham conveyed no title; that the said Elizabeth could not, in her lifetime, have redeemed the premises sought to be redeemed; and that no person or persons claiming under her, could have any legal or equitable title to the premises, and that the defendant only had a right in equity to redeem the same.

*L. Hall,* for the complainants.
*J. Hall,* for the defendant, Rathbun.

By the COURT. The indebtedness of A. B. Rathbun to Mrs. E. Peckham was a good consideration for the interest which his deed of the 16th of March, 1813, purports to convey.

The lodging of the deed with the town clerk by Mrs. Peckham, and the subsequent admissions of the grantor, as testified by Hall, (if he be a competent witness) and others, are presumptive evidence of its delivery. It is at least enough to prove, *prima facie,* that the deed came to her possession with the assent of the grantor.

When a deed, which has never been recorded, is lodged with a town clerk, the act of lodging it, unaccompanied with any counter declarations, is itself an implied direction to record; and, other things equal, the title is complete upon its being lodged with such implied directions; for, by the terms of our statute, the lodging of a deed to be recorded is equiv-

alent to an actual entry of it upon record, so far forth as is necessary to perfect the title.

The title being made complete by such lodgment, the subsequent neglect of the town clerk cannot affect the grantee's rights under the deed.

The deed remaining on file in the clerk's office, and open to inspection, is notice to all the world of a conveyance of the land, either absolute or conditional.

But there are circumstances attending this transaction well calculated to draw into question Elizabeth Peckham's title to an unconditional estate in this land. The debt which formed the consideration of the deed appears to have remained in her hands undischarged. The possession of the property continued in the grantor to all appearance without change of use, except that he was at times called on to settle, and was once threatened with a demand, or with a suit for the possession of the land; and further, the deed was suffered to remain on file unrecorded, until shortly before the grantee's death. The conduct of Elizabeth Peckham, then, was precisely such as if the deed had been a mortgage, or as if it had been delivered to her as collateral security for her demand; and there is nothing in the conduct of A. B. Rathbun inconsistent with this purpose, except the single fact that the deed on the face of it is absolute. From all the circumstances the grantor appears to have had two objects in view. First, to secure the debt due to the grantee. This was a good object. Second, to cover his property from the suits of his other creditors. This was a fraudulent purpose. Elizabeth Peckham would not have done herself justice had she not concurred in the first object, and accepted the deed as collateral security for the debt then due her; and so far the transaction was perfectly honest between both parties. As to the second object, there is no proof at all that she concurred in

it; there is none that she knew it; on the contrary, she treated the deed only as a mortgage; she was not, therefore, in *pari delicto*, and the deed must at least be regarded, by a court of equity, as collateral security for the debt due her at the time it was given. If the evidence by which this view is taken be competent, it is plain that the deed under this bill must stand as good. The plaintiffs must be allowed to redeem, and if Joshua B. Rathbun take any estate, it is a mere equity of redemption, subject to the prior rights of the plaintiffs.

But is the evidence competent? Mr. J. Hall is the only witness objected to as incompetent. He is the main witness in support of the bill. Without his testimony, it may be doubtful whether the bill can be sustained. Is he, then, a competent witness? The objection is, that he has not parted with his interest in the estate.

Now, if the deed of Rathbun to Elizabeth Peckham is void, it is plain that Hall has no interest in this suit, for he does not appear as a party in any way, and he has merely released his interest without covenant or warranty. But if the deed be not void, he has an interest, unless he has divested himself of it by his quitclaim made to plaintiffs, before the commencement of this suit. Has he so divested himself?

If the deed of A. B. Rathbun to E. Peckham be regarded as a mortgage, then the release of Hall and wife to plaintiffs may consistently in equity be considered an assignment, and, surely, a mortgagee has a right to assign an equity of redemption, even though another mortgagee, claiming by the same title, be in the actual possession of the premises. But it may even stand good as a release. The defendants, as *mortgagees*, (and only as mortgagees does the bill regard them) were all privies in estate with the heirs of Mrs. E. Peckham, and the actual possession of one privy is construct-

ively the possession of each, according to his title ; and this, although the party in possession claim to be in by an adverse title. The following principle is laid down in 2 Starkie, 657, 5th edition : " Where a party *is in actual possession*, and has a right to possession under a legal title which is not adverse, but claims the possession under another title which is adverse, the possession will not in law be deemed adverse. Hence, as the actual possession of the defendants, as mortgagees, enured to the benefit of all privies, it enured to the benefit of the heirs of E. Peckham, and those claiming under them. The plaintiffs, therefore, were in a condition to take, even by way of release, and Hall and wife's quitclaim may then operate as a release, or at least as an extinguishment of their claims under E. Peckham's deed, in favor of the plaintiffs.

Hall, then, is a competent witness, and ought not to have been named as one of the plaintiffs in the bill.

The defendants ought, therefore, to account with the plaintiffs, and the plaintiffs be allowed to redeem.