EDWIN C. SEARLE *et al. vs.* LUTHER LARAWAY *et al.*

APRIL 30, 1906.

PRESENT: Douglas, C. J., Dubois, Blodgett, Johnson, and Parkhurst, JJ.

(1)  *Guardian and Ward.   Adverse Possession by Guardian to Ward.*

The relation of guardian and ward is of such a nature that during its existence the lawful possession by the guardian of the ward's real estate can not, as matter of law, by any act of the guardian be converted into a possession adverse to the ward so as to found a title by adverse possession in the guardian.

TRESPASS AND EJECTMENT.   Certified to the Supreme Court, under the provisions of section 478 of the court and practice act, by the Superior Court.   Heard on demurrers to defendants' rejoinders.   Demurrers sustained.

BLODGETT, J.   Under the provisions of section 478 of the court and practice act, the Superior Court has certified to this court these demurrers to the defendants' fifth, seventh, and ninth rejoinders, in an action of ejectment.

The pleadings essential to a determination of the question involved may be thus summarized: To a declaration in ejectment brought October 3, 1904, the defendants, *inter alia,* plead adverse possession by themselves and their ancestors in title for more than twenty years, under chapter 205 of the General Laws.   To these pleas the plaintiffs reply *precludi non,* averring the seisin in fee and the possession of the premises to have been in one Edwin C. Searle at the time of his decease, January

15, 1868, intestate; that the plaintiffs were his minor children and did not attain majority until October 6, 1884, and October 22, 1886, respectively; that their mother, Lavinia W. Searle, was duly appointed their guardian on June 8, 1869, and so remained until their majority, and conveyed the premises in question to one Sarah L. Newkirk, now Sarah L. Farnham, the defendants' lessor, on April 30, 1885. To this replication the defendants rejoin that the said Lavinia entered into possession on October 8, 1872, under the will of said Edwin C. Searle, the father and husband, probated on that day, and that more than ten years have elapsed since the plaintiffs attained their majority and before action. To these rejoinders the plaintiffs demur, and the question thus raised is stated by them, on their brief, as follows:

" The plaintiffs conceive that the only point of law raised by these demurrers is whether a person who is the mother and guardian of minor children and continues to be such guardian throughout their minority can by any action on her part during such minority claim adversely to her children and wards so as to set in operation the bar effected by chapter 205 of the General Laws."

Sections 2 and 3 of chapter 205, General Laws, went into effect February 1, 1896, and are as follows:

"SEC. 2. Where any person or persons, or others from whom he or they derive their title, either by themselves, tenants or lessees, shall have been for the space of twenty years, or for the space of ten years beginning at any time hereafter, in the uninterrupted, quiet, peaceable, and actual seisin and possession of any land, tenements, or hereditaments for and during the said time, claiming the same as his, her, or their proper, sole, and rightful estate in fee-simple, such actual seisin and possession shall be allowed to give and make a good and rightful title to such person or persons, their heirs and assigns forever; and any plaintiff suing for the recovery of any such lands may rely upon such possession as conclusive title thereto, and this chapter being pleaded in bar to any action that shall be brought for such lands, tenements, or hereditaments, and such actual seisin and possession being duly proved, shall be

allowed to be good, valid, and effectual in law for barring such action.

"SEC. 3. Nothing in this chapter shall be so construed, deemed, or taken as to extend to prejudice the rights and claims of persons under age, persons of unsound mind, or persons imprisoned or beyond the limits of the United States, they bringing their suits therefor within the space of ten years next after such impediment is removed; nor to bar any person or persons having any estate in reversion or remainder, expectant or depending in any lands, tenements, or hereditaments, after the end or determination of the estate for years, life, or lives, such person or persons pursuing his or their title by due course of law within ten years after his or their right of action shall accrue."

Literally construed, the statute would be effective even against the State. But this court in *Almy* v. *Church*, 18 R. I. 182, has decided that this is not so, and that the ancient maxim "*Nullum tempus occurrit regi*" is in force in this State. And see also *Simmons* v. *Cornell*, 1 R. I. 519.

But there are also other relations in which a right by adverse possession can not accrue during the existence of such relations. As for example: No tenant during the existence of his tenancy can be permitted to claim a right to the premises adverse to his landlord, inasmuch as the relation of the parties precludes such a claim. Nor can a life tenant hold adversely to a reversioner. Similarly it is well settled that a purchaser at a sheriff's sale of an estate for life of a judgment debtor holds in subordination to the title of the reversioner and an adverse possession against the latter can not be predicated of it, inasmuch as the purchaser succeeded only to the exact estate of the debtor. And as to mortgagor and mortgagee see, *Doyle* v. *Mellen*, 15 R. I. 523; *Glezen* v. *Haskins*, 23 R. I. 601–605.

In the case at bar the rejoinders do not traverse the allegation that the plaintiffs' father, Edwin C. Searle, deceased intestate, and seized in fee of the premises, on January 15, 1868; that the plaintiffs were his minor children and under the guardianship of their mother, Lavinia W. Searle, from June 8, 1869, until they attained their majority on October 6, 1884,

and October 22, 1886, respectively. It was conceded, also, at the argument, that the will of Edwin C. Searle was not probated until October 8, 1872, and that, the premises in question not having been acquired by the testator until after its execution, he died intestate as to the property in dispute.

(1)     Now it is entirely obvious that upon the appointment of the mother as guardian of these minors, on June 8, 1869, she then became entitled in that capacity to the possession of the estate. Nor could they dispossess her so long as she remained guardian. And in Nichols v. Reynolds, 1 R. I. 30, 38, this court held: "Where a party is in actual possession, and has a right to possession under a legal title which is not adverse, but claims the possession under another title which is adverse, the possession will not in law be deemed adverse." We are of the opinion that this principle is decisive of this case, and that the relation of guardian and ward is of such a nature that during its existence the lawful possession by the guardian of the ward's real estate can not, as matter of law, by any act of the guardian, be converted into a possession adverse to the ward so as to found a title by adverse possession in the guardian. Doubtless an adverse possession may be asserted against a minor by third parties, but it can not be permitted that the one upon whom the law casts the duty of protecting the minor from such adverse claims as against all the world shall himself be thus rewarded for his breach of trust. If the guardian desires to claim adversely to the ward, he must first resign his guardianship.

The relation of a guardian to the real estate of his ward is thus stated in Westenfelder v. Green, 24 Or. p. 450:

"Having accepted the trust and entered into possession of the property to carry out its provisions, he could not dispute the title of his wards or assert that he is holding the property in any other capacity so long as that relationship existed, nor could he change the character of his holding by any admissions or declarations he might make. Under the facts the law determined for whom he was holding the property, and any statement he might have made to the contrary could not alter these facts nor justify any different determination. The law fixed

his relation to the property, and no declaration of his could affect the possession taken and held by him under his appointment.    In legal effect, as against his wards, such declarations would amount to nothing.    To suffer a guardian by his admission or declaration to defeat or affect the title of his wards would, it seems to us, open the door for the grossest fraud and injustice."

And in *Livingston* v. *Pendergast*, 34 N. H. 544–551, the Supreme Court of New Hampshire thus clearly define the duties of a mother and natural guardian towards her children and wards:

"We regard it as a well-established principle, and of great practical importance, that when the widow, upon the death of her husband, having right of dower, continues with her minor children in possession of his real estate; or, subsequently to his decease, enters into the possession with the minor children, they being the heirs at law, her entry and possession are in law to be considered as made and taken for her and their benefit;  for herself, in reference to her rights of dower only;  and for her children, the heirs at law, as their natural guardian. Whatever may be the circumstances attending her possession, unless they are such as to amount to an ouster in fact, of the minor heirs—to an actual exclusion of them from the possession—sound policy requires that she should not be permitted to claim that her possession, while they continued to remain with her, as members of her family, and under her control, upon the land, was adverse to their title.

"The nurture and tutelage of the infant children devolve upon her.    This duty in many cases she can satisfactorily fulfill only by occupying the estate, living with them upon it, and managing it for their common benefit.    Probably, in a majority of cases, partition of the estate among the infant heirs, and a several occupancy by their legal guardians, would be prejudicial to their interests, and in many cases would result in disabling her from maintaining a home for herself and them.    To compel the legal guardians, for the protection of the rights of their wards, to resort to legal proceedings against her, whenever her possession was assuming what,

as between strangers, would be an adverse character, would tend directly to these results. A wise policy, and one more consonant to the received doctrine in other cases of trust and confidence, would certainly be to protect their rights in the other mode, by holding that in the confidential relations which she sustains to her infant children, as their guardian by nature, when she takes possession of their estate she is not to be permitted to set up any claim of right in herself, or colorable title to herself, in conflict with theirs."

It follows that the demurrers are sustained, and the case will be remanded to the Superior Court for further proceedings.

*Frank A. Williamson, Alfred Wilson & Livingston Ham,* for plaintiff.

*Clarence A. Aldrich,* for defendants.