ST. JEAN PLACE CONDOMINIUM
ASSOCIATION

v.

Raymond DeLEO et al.

No. 98–356–Appeal.

Supreme Court of Rhode Island.

Feb. 2, 2000.

Douglas A. Giron, Providence, for Plaintiff.

Gerald M. DeCelles, for Defendant.

Present WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS and GOLDBERG, JJ.

## O P I N I O N

PER CURIAM.

The defendants, Raymond DeLeo (DeLeo), Gerard M. DeCelles (DeCelles) and Raymond Construction Co., Inc. (Raymond Construction), appeal from a partial summary judgment entered by the Superior Court in favor of the plaintiff, St. Jean Place Condominium Association (the association). In its suit against the defendants, the association sought *inter alia*, to quiet title as to Unit C–6 of the St. Jean Condominium (the condominium) in Warren, Rhode Island. We directed the parties to show cause why the issues raised in this appeal should not be summarily decided. No cause having been shown, we now proceed to decide the issues before us.

The condominium was created by St. Jean Associates (the developer), a Rhode Island general partnership, pursuant to the filing of a Declaration of Condominium (the declaration) on December 20, 1984, which was duly recorded in the Land Evidence Records of the Town of Warren (the Land Evidence Records). DeLeo was a general partner of the developer.

Section 9.4 of the declaration gave the developer the right to create an additional residential unit (Unit C–6) in the condominium out of designated management space by an amendment to the declaration and by recording that amendment in the Land Evidence Records for the Town of Warren before December 31, 1985.[1] In the absence of that timely amendment to the declaration being made by the developer, Unit C–6 automatically would become a permanent part of the common elements of the condominium. No such amendment to the declaration by the developer ever was made or recorded, and accordingly, Unit C–6 on December 31, 1985, became a permanent part of the condominium common elements.

Sometime in 1995, the association became aware that Unit C–6 was being occupied by an individual who was not a member of the association. Upon investigation, the association learned that DeLeo, DeCelles and Raymond Construction were somehow claiming ownership in the unit.[2] The association, after failing to amicably resolve the question of ownership with DeLeo and DeCelles, then filed an action in the Superior Court seeking to quiet title to its common element ownership of Unit C–6 and seeking damages for its use and occupation. DeLeo and DeCelles answered

1. The full text of Section 9.4 of the declaration is as follows:
   "The Unit designated Management Space on the Plats and Plans is hereby designated a Unit of the Condominium owned and controlled by the Declarant. The Unit designated Management Space shall continue under the ownership and control of the Declarant until the Declarant exercises its development rights hereunder thereby changing the character of the Unit to a residential Unit. If the Declarant fails to exercise said development rights hereunder by December 31, 1985 then the Unit designated Management Space on the Plats and Plans shall become a common element of the Condominium."

2. Raymond Construction subsequently disclaimed any corporate ownership in Unit C–6.

and counterclaimed, asserting that they were claiming ownership of the unit by virtue of an unrecorded deed executed on December 31, 1986, by DeLeo, as general partner of the developer, which purported to convey Unit C–6 to DeLeo and DeCelles as tenants in common.

Because the developer had failed to timely exercise its right to change Unit C–6 into an additional condominium residential unit pursuant to Section 9.4 of the declaration, the plaintiff association asserted that Unit C–6 continued to remain vested as a part of the common elements of the condominium. On that basis, the association moved for entry of partial summary judgment on count 1 of its complaint to quiet title. The defendants DeLeo and DeCelles objected, claiming that despite their failure to have recorded the December 31, 1986 deed conveying to them title to the unit, they had nonetheless acquired title by adverse possession pursuant to G.L.1956 § 34–7–1.

At the hearing, when DeCelles was questioned by the hearing justice about his ability to acquire Unit C–6 by adverse possession, when at the same time he owned another unit in the condominium, thus making him also an owner of the common elements in the condominium of which Unit C–6 was part, he asserted that he had "established adversity in that respect, as to my other co-tenants, and adverse to my co-tenant, Mr. DeLeo, who owns adverse to me and the co-owners." Brushing aside that "who's on first, no, he's on second" argument, the hearing justice granted the association's motion for partial summary judgment.[3] This appeal followed. In it, DeLeo and DeCelles claim that the trial justice erred in granting the motion for partial summary judgment in favor of the association because there existed genuine issues of material fact concerning whether they owned Unit C–6 pursuant to the unrecorded December 31,

1986 deed, or alternatively, through adverse possession.

For the reasons hereinafter set out, we reject the defendants' assertions, deny their appeal, and affirm the trial justice's granting of the association's motion for partial summary judgment.

I

The Unrecorded Deed

The defendants claim that the trial justice erred in granting partial summary judgment, asserting that the 1986 deed met the statutory requirements for a valid conveyance. They contend that although the 1986 deed had not been recorded, the association nonetheless had notice of the deed from the time of its execution and delivery to the defendants, thus making the conveyance of the ownership interest in Unit C–6 valid as between themselves and the association.

The defendants' contention that the December 31, 1986 unrecorded deed somehow served to convey to them title ownership to Unit C–6 is meritless and appears to be simply a decoy. The defendants could take no ownership interest in the unit by virtue of the deed, whether recorded or not, because at the time DeLeo made and executed the deed, as general partner of the developer, the developer possessed no ownership interest that it could convey to anyone. The developer's entire ownership interest in Unit C–6 had been extinguished one year earlier, on December 31, 1985, pursuant to Section 9.4 in the declaration. Thus, DeLeo was incapable of breathing life into the dead horse, and the defendants' assertion that the association had somehow become aware of the deed and thus became bound to it pursuant to G.L. 1956 § 34–11–1 simply overlooks the indisputable fact that the developer could not convey what it did not own, and the re-

---

**3.** Final judgment was entered on July 20, 1998, pursuant to Rule 54(b) of the Superior Court Rules of Civil Procedure.

cording statute is of no assistance to their plight.

## II

### The Adverse Possession Claim

DeLeo and DeCelles next cite as error the trial justice's determination that they had not established ownership of Unit C–6 through adverse possession. They assert that their exclusive possession of the unit since 1986 satisfied the statutory criteria for adverse possession as set forth in § 34–7–1.[4] The trial justice found this argument to be without merit, noting primarily that DeCelles had failed to demonstrate how he could adversely occupy common elements of the condominium to which he already owned and possessed a preexisting lawful right to occupy.

■■■ "In reviewing the grant of a summary judgment motion, this Court employs the same standard on review as the trial justice. We must examine all of the pleadings, memoranda and affidavits in the 'light most favorable to the party opposing the motion.'" *Truk–Away of Rhode Island, Inc. v. Aetna Casualty & Surety Co.*, 723 A.2d 309, 313 (R.I.1999) (quoting *Splendorio v. Bilray Demolition Co.*, 682 A.2d 461, 465 (R.I.1996)). If our review of the hearing evidence in this light "reveals no genuine issues of material fact, and if we conclude that the moving party was entitled to judgment as a matter of law, we shall sustain the trial justice's granting of summary judgment." *Accent Store Design, Inc. v. Marathon House, Inc.*, 674 A.2d 1223, 1225 (R.I.1996).

■■■ We believe that the defendants' claim of title pertaining to Unit C–6 must fail pursuant to G.L.1956 § 34–36.1–3.12 of the Rhode Island Condominium Act (the Condominium Act) concerning any conveyance or encumbrance of common elements of a condominium. Section 34–36.1–3.12(a) provides that common elements in a condominium can be conveyed or encumbered only "if persons entitled to cast at least eighty percent (80%) of the votes in the association * * * agree to that action" and such a ratification is in writing and is duly recorded. In the absence of an agreement meeting those statutory requirements, "[a]ny purported conveyance, encumbrance, judicial sale or other voluntary transfer of common elements * * * is void." Section 34–36.1–3.12(d).

We further note that § 34–36.1–2.07(e), dealing with the allocation of common element interests, provides that:

"The common elements are not subject to partition, and any purported conveyance, encumbrance, judicial sale, or other voluntary or involuntary transfer of an undivided interest in the common elements made without the unit to which that interest is allocated, is void."

A plain reading of the statute indicates that the common elements of the condominium cannot be partitioned or transferred, voluntarily or otherwise, in favor of a member of the association or one who holds jointly or in common with said member in the absence of a vote by at least 80 percent of the membership in the association. As the defendants themselves concede in their appeal before this Court, and as the very existence of the instant litigation demonstrates, the defendants here have attempted to transfer the ownership interest of Unit C–6 to themselves without the required vote of the other unit owners in the association. Therefore, we conclude that the defendants' attempted transfer of the ownership interest in Unit C–6 clearly constitutes an "involuntary transfer of an

---

4. That contention appears as somewhat oxymoronic in light of DeCelles's clear statement made to the hearing justice that he was in fact claiming title to the unit "adverse to my cotenant, Mr. DeLeo" and Mr. DeLeo "owns adverse to me and the co-owners." If that be so, both DeCelles and DeLeo have negated the other's ownership interest in Unit C–6 by adverse possession and neither could claim any ownership right to the unit, except DeCelles by virtue of his shared ownership interest with each of the other association members in the common elements of the condominium.

undivided interest in the common elements" of the condominium and is specifically proscribed by our Condominium Act and, as such, cannot serve to vest title in Unit C–6 in the defendants.

■ Additionally, we further note from the record before us that DeCelles, during the period in which he claimed to have adversely possessed Unit C–6, owned a separate residential unit in the condominium, thereby vesting in himself, as a unit owner, the aforementioned "undivided interest in the common elements." By virtue of that ownership interest in the common elements of the condominium, DeCelles's claim of adverse possession is without merit. Our adverse possession statute, § 34–7–1, provides:

"Where any person or persons, or others from whom he, she, or they derive their title, either by themselves, tenants or lessees, shall have been for the space of ten (10) years in the uninterrupted, quiet, peaceful and actual seisin and possession of any lands, tenements or hereditaments for and during that time, claiming the same as his, her or their proper, sole and rightful estate in fee simple, the actual seisin and possession shall be allowed to give and make a good and rightful title to the person or persons, their heirs and assigns forever; and any plaintiff suing for the recovery of any such lands may rely upon the possession as conclusive title thereto, and this chapter being pleaded in bar to any action that shall be brought for the lands, tenements and hereditaments, and the actual seisin and possession being duly proved, shall be allowed to be good, valid and effectual in law for barring the action."

■ We have consistently held that "in order to establish adverse possession under § 34–7–1, a claimant's possession must 'be actual, open, notorious, hostile, under claim of right, continuous, and exclusive.'" *Anthony v. Searle*, 681 A.2d 892, 897 (R.I. 1996) (quoting *Locke v. O'Brien*, 610 A.2d 552, 555 (R.I.1992)). These elements of adverse possession "must be proved by strict proof, that is, proof by clear and convincing evidence of each of the elements of adverse possession." *Id.*

As discussed above, DeCelles, who was at the time a unit owner, enjoyed possession of an undivided interest in Unit C–6, which constituted a part of the common elements of the condominium. It is axiomatic that "[w]here a party is in actual possession, and has a right to possession under a legal title which is not adverse, but claims the possession under another title which is adverse, the possession will not in law be deemed adverse." *Searle v. Laraway*, 27 R.I. 557, 560, 65 A. 269, 271 (1906) (quoting *Nichols v. Reynolds*, 1 R.I. 30, 38, 36 Am. Dec. 238 (1840)). *See also* 3 Am.Jur.2d *Adverse Possession* § 50 (1986) ("[a] possession that is in law rightful and not an invasion of the rights of others is never deemed to be adverse"). Thus, we believe that DeCelles's preexisting possessory interest in the common elements of the condominium precluded him from adversely claiming ownership in those common elements, including Unit C–6. De-Leo's claim to adverse possession fares no better and fails because he could not acquire title to Unit C–6 by adverse possession since he claimed to hold in common with DeCelles.

Consequently, for the reasons discussed above, we deny the defendants' appeal and affirm the judgment of the Superior Court, to which we return the papers in this case.