263 A.2d 111.

RALPH ANTUONO *vs.* FIORENZO FARAONE *et al.*

MARCH 19, 1970.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

KELLEHER, J. This is a bill in equity to remove a cloud on title to certain real estate purchased by the complainant and for other incidental relief. The respondents filed

an answer in which they denied the material allegations on which the complainant bases his prayers for relief. After a hearing before a justice of the Superior Court on bill, answer and proof, a decree was entered denying and dismissing the bill. From such decree, the complainant has appealed to this court.

Most of the material evidence in this cause is undisputed. On January 24, 1924, Bennie Faraone purchased a parcel of land containing six lots located in the Budlong Park section of Cranston. These lots were and still are unimproved vacant land. Bennie did not pay the taxes which were assessed on those lots for the years 1930 through 1951. On February 2, 1953, he conveyed the six lots to his son and his daughter-in-law, respondents herein. On April 20, 1954, the City of Cranston held a tax sale. One of the parcels scheduled for sale on that date was respondents' six lots. The lots were to be sold for the 22 years' back taxes, interest thereon and other charges. The requisite statutory notice of the sale was sent to Bennie and the two respondents. The controlling statute at this time was P. L. 1946, chap. 1800, now known and cited as G. L. 1956, chap. 9 of title 44. Hereafter when discussing the various statutes which relate to the 1954 tax sale, we shall refer to the pertinent provisions of chap. 9 of title 44. At the sale, no person offered to pay a sum equal to the back taxes and other charges assessed against the six lots and the tax collector, in accordance with the provisions of §44-9-14, made a public declaration of this fact and thereupon purchased the parcel for the city. A tax deed conveying this land to the city was duly recorded on May 19, 1954.

In the spring of 1957, the General Assembly adopted an act permitting the City of Cranston to sell any parcel of real estate it had purchased at the various tax sales which had been held in that municipality. This legislation (P. L. 1957, chap. 97) specifically authorized the city council to

enact an ordinance whereby the tax collector could sell any real estate previously acquired by the city at a tax sale provided that the property had been held by the city for a period of at least five years. On September 23, 1957, the city council enacted an ordinance which set up a detailed procedure for the sale and disposition of the city-held tax-delinquent property. The ordinance provided that a parcel could be sold if the council was of the opinion that the parcel was of insufficient value to satisfy the costs of the back taxes, interest and other charges of the tax sale together with all subsequent taxes and assessments levied thereon. Public notice of the sale was to be given by a newspaper advertisement which would contain a detailed description of the property to be sold. The ordinance also required that a potential purchaser submit a sealed bid together with a certified check equal to ten per cent of his bid. Each bid was to list the former owners of the land. After the receipt of the bids, the city treasurer was required to notify the taxpayer of this fact and afford him an opportunity to redeem the property. The bids were to be opened 90 days thereafter at which time they would be accepted or rejected by the council.

On January 7, 1960, the city treasurer conveyed the six lots to complainant for a price of $306. The deed was recorded on the day it was executed. Over a year later, on August 8, 1961, respondents tendered the sum of $435.20 to the city treasurer who in turn issued thereon a document entitled "Treasurer's Certificate of Receipt of Money Paid for Purpose of Redemption." The respondents recorded the certificate of redemption. The treasurer forwarded complainant a check for $435.20. The complainant not only returned the check to the treasurer, but he also attempted to pay the current taxes due on the parcel. The treasurer refused to accept complainant's payment inasmuch as it had been paid by respondents. This suit was commenced

in January 1962. The record shows that Bennie Faraone died in April 1961—some months prior to the commencement of this suit.

This appeal challenges the correctness of two findings made in the decree denying and dismissing the bill. They are: (1) the 1954 sale of the six lots was void; and (2) the 1960 sale of this property to complainant was also void. We believe that the record supports the trial court's action.

In denying complainant's request that he be declared to be the owner in fee simple of the six lots of land, the trial justice pointed to numerous gaps in his chain of title. The trial judge emphasized that the 1954 sale was held because of an alleged lien on the real estate for 22 years' delinquent taxes. However, as the trial justice so well observed, the city, when it held the 1954 sale, had lost its lien for all but one year's taxes because of Bennie's February 1953 conveyance to his son and daughter-in-law. Section 44-9-1 states that real or personal property taxes assessed against a taxpayer shall constitute a lien on his real estate. This section further provides that the lien shall arise and attach as of the date of assessment and it shall terminate at the expiration of three years thereafter if during the three-year interval the real estate has been alienated and the instrument alienating the property has been recorded. Otherwise, the statutory lien shall continue until there is a recorded alienation of the estate.

The complainant maintains that this court should hold that the lien for all the back taxes was intact at the time of the 1954 tax sale because, he contends, there is no evidence in the record to support the trial justice's finding that the 1953 deed from Bennie to respondents was recorded prior to the tax collector's levy which preceded the sale. The complainant is mistaken both as to the lack of evidence about the time of the deed's recording and as to the necessity of showing the tax collector's levy.

In *Parker* v. *MacCue*, 54 R. I. 270, 172 A. 725, it was shown that the word "levy" is not used in the same sense throughout the tax statutes. The qualified voters "levy" a tax when they vote to impose it (§44-5-1), whereas a tax collector "levies" a tax when he forms a fixed mental intention to sell tax-delinquent property. The predecessor statute to the 1946 tax sales act was G. L. 1938, chap. 32. Section 12 thereof provided that the tax sale would be held *"after notice has been given of the levy"* (Italics ours.) and after the time and place of sale had been posted in two or more public places in a municipality and a notice of sale placed in a newspaper published in the city or town. The 1946 statute, however, made many changes in the pretax sale procedures. The new law eliminated any necessity that the tax collector make any levy on tax-delinquent property to initiate the tax sale proceedings set forth in the statute. While in the past a tax collector would make an entry in a public record book known as the Levy Book of his mental act of determination to sell estates for which taxes and assessments were due and unpaid, chap. 9 of title 44 obviates the need for any such action.

There is, in the record before us, evidence to support the trial court's finding that the 1953 deed to respondents was recorded prior to the 1954 sale. The complainant in his bill concedes that the deed was recorded. He does not, however, tell us the date. Nevertheless, it is unquestioned that the city gave notice of the proposed sale of the six lots to Bennie, his son and his wife. The city's notice is an indication that the 1953 deed had been recorded in the Cranston registry of deeds when the tax collector began to give all interested parties notice of the scheduled sale. It is common knowledge that municipal tax officials constantly update their records by noting thereon the changes that occurred since the last assessment date in the ownership of real estate. These changes are found by examining the

conveyances which have been recorded in the office of a city or town clerk or the registry of deeds. The trial justice's inference that Bennie's deed was recorded prior to the sale is reasonable and finds support in the record before us.

Our examination of the record shows that the total tax due the City of Cranston as the result of the December 31, 1951 assessment on the six lots amounted to the insignificant figure of approximately $12.32. This was the amount of the lien which the city possessed on the land when it was sold in 1954. The city, however, paid $485.72 as the amount of the taxes, interest and the expenses of sale attributable to this parcel. A memorandum issued by the city treasurer shows that the land was sold for back taxes which amounted to $241.56 and that the interest and the cost of the sale amounted to $246.16[1]. In *Jamestown* v. *Pennsylvania Co. for Banking and Trusts*, 101 R. I. 274, 221 A.2d 821, and *Spencer* v. *Kilbourn*, 80 R. I. 38, 90 A.2d 782, we said that one of the purposes of §44-9-12, which requires a tax collector's deed conveying several lots of unimproved and vacant land to set forth the tax and cost due on each lot, is to enable the taxpayer to ascertain from the deed how much he will have to pay to redeem any one lot or particular parcel of land which has been sold for the nonpayment of taxes. It is obvious that the legislature believed this matter of setting forth on a tax collector's deed the information as to the taxes and costs due on each lot to be a matter of some importance. It also follows that, if this information is to be given, it must be accurate. In the circumstances of this cause, therefore, we affirm the trial court's finding that the 1954 sale held under a claim

---

[1]The total amount of the money due according to the treasurer's memorandum is $487.72. The city, when it bid on the property, paid $485.72. We are unable from the record before us to account for the two-dollar discrepancy.

of an alleged lien for 22 years' back taxes was a substantial error which voids the sale.

In sustaining the trial justice's finding relative to the validity of the 1954 tax sale, we are aware that §44-9-2 reads in part that, if a person is taxed for several parcels of real estate, each of such parcels shall be liable for the tax assessed against it, even though the same may have been alienated. The portion of this section which states that the parcel shall be liable for a tax assessed against it, even though it may have been conveyed to someone else, must be read in pari materia with §44-9-1. While the parcel is liable for the tax, this liability may be limited, as it is in this cause, to the three-year period described in §44-9-1.

Throughout this litigation, complainant has based his claim of ownership of the six lots exclusively on the provisions of the 1957 enabling act and the ordinance thereafter enacted. This being so, it must be kept in mind that such legislative enactments will be strictly construed in favor of the taxpayer. *Parker* v. *MacCue, supra.* The complainant not having purchased the land according to the provisions of chap. 9 of title 44, the state-wide tax sales statute, may not rely on §44-9-35, which provides that a tax sale or a deed given thereunder shall not be vitiated by a minor error or irregularity committed by any official charged with the responsibility of conducting the sale.

We must therefore insist upon strict compliance with the terms of the Cranston ordinance before a taxpayer or one claiming through him may be stripped of his title to real estate.

The Cranston ordinance required that the sealed bids contain a certified check representing ten per cent of the bid. The check which accompanied complainant's bid is an exhibit. It is his personal check and it is not certified. The ordinance also required the city treasurer to notify the

taxpayer that a sealed bid had been received for his property. The notice sent pursuant to this portion of the ordinance is an exhibit. It was sent on June 11, 1959. The complainant's check is dated one week later—June 19, 1959. Apparently the notice was sent prior to the receipt of the bid. In the light of this patent disregard of the explicit requirements of the ordinance the trial justice was correct when he voided the 1960 deed which ran from the city treasurer to complainant.

In his brief, the complainant argues that the respondents' right to redeem the six lots was terminated when he purchased the land. Since the 1960 sale was void, we are not required to analyze the enabling act to determine if it authorized a sale free and clear of the equity of redemption. The respondents filed an answer but no cross bill. They did not seek in this court to quiet title to the real estate. The trial justice's decree does not make any finding as to what the enabling act in fact authorized. In any equity suit to settle disputed title to land, a complainant must recover solely on the strength of his own title. Here, the complainant failed to establish the validity of either the 1960 or the 1954 tax sale of the six lots. We are therefore not required to make any study of the 1957 statute.

The appeal of the complainant[2] is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the Superior Court.

*Seth K. Gifford,* for complainant.

*Beals, Sweeney & Jerue, George F. McDonald,* for respondents.

---

[2]This cause was tried long before the Superior Court adopted its new rules of civil procedure which abolished the distinction between the trial of suit in equity and an action at law. We have, therefore, in this opinion used the terminology found in equity proceedings.