Katarzyna **LEWICKI**

v.

Theodore **MARSZALKOWSKI.**

No. 80-232-Appeal.

Supreme Court of Rhode Island.

Jan. 25, 1983.

William Y. Chaika, Cranston, for plaintiff.

Zimmerman, Roszkowski & Brenner, Joseph J. Roszkowski, Woonsocket, for defendant.

## OPINION

KELLEHER, Justice.

The decisive and intriguing issue presented by this appeal is whether an individual who conveys a parcel of Rhode Island real estate to another by warranty deed can at some later date claim title to the identical parcel against the grantee's successor by way of adverse possession. A Superior Court justice said no, and so do we.

In mid-June 1928, plaintiff, Katarzyna Lewicki, and her husband, Adolph, purchased from William Mushnick an estimated forty-three-plus-acre piece of farmland situated in the town of Cumberland on the westerly side of Burnt Swamp Road.[1] The title was recorded in Cumberland's town hall in book 76 at page 318. Two pages later, on page 320 of book 76, can be found a deed in which Katarzyna and Adolph conveyed to Adam Marszalkowski "with WARRANTY COVENANTS" an estimated two-and-three-quarter-acre portion of the Mushnick parcel that today is identified in the office of the Cumberland tax assessor as lot No. 50 on assessor's plat No. 47.

In early August 1965 Adam conveyed several parcels of land, including that in question here, to his sons, Steve and Theodore Marszalkowski, as tenants in common. Six years later, Steve delivered a quitclaim deed to Theodore for two of those parcels. Later, in October 1975, Theodore informed Katarzyna that he owned the parcel. After this announcement Theodore's children converted their father's two and three-quarter acres into a baseball field complete with a backstop. These developments caused Katarzyna to initiate this civil action in which she alleges that during the forty-odd years since the transfer of lot No. 50 to Adam, she and her husband—and after his death she alone—maintained the lot as a place where they mowed hay, planted oats, maintained a garden, and fed the cattle. They also used a bulldozer to remove stones from the parcel, which in turn were placed atop the stone walls that separated it from other property owned by the Marszalkowski family. In other words, Katarzyna maintains that following the delivery and recording of the 1928 conveyance her possession of the two-and-three-quarter-acre lot has been actual, open, notorious, hostile, continuous, exclusive, and under a claim of right for the full statutory period of ten years. General Laws 1956 (1969 Reenactment) § 34–7–1.

Although the precise issue now before us is one of initial impression in this jurisdiction, the court in *Malone v. O'Connell,* 86 R.I. 167, 170, 133 A.2d 756, 758 (1957) (a boundary-line dispute), noted that title by adverse possession may be acquired by a grantor as against his grantee but pointed out that as a general rule in situations in which the grantor retains possession of the land, such possession will be presumed to be subordinate to the title of his grantee and thus not adverse unless and until such time as the grantor by some affirmative action indicates to the grantee that the grantor's occupancy is hostile to the grantee's title. Similar sentiments have been expressed in 3B Thompson, *Real Property* § 1555 at 685 (1979 ed.); 4 Tiffany, *The Law of Real Property,* § 1182 at 916 (3d ed. 1975); Annot., 39 A.L.R.2d 353 (1955).

1. A portion of the farmland is located in the neighboring town of Wrentham, Massachu-
setts.

The trial justice based his dismissal of Katarzyna's claim on the holding found in *Hodges v. Goodspeed,* 20 R.I. 537, 539, 40 A. 373, 374 (1898), where in an action of *trespass quare clausum fregit* the defendant responded with a denial of any trespassing, claiming that he had acquired a prescriptive right-of-way over the plaintiffs' waterfront property. In the early 1900s the prescriptive period that had to expire before a use could ripen into a right was twenty years.[2] Title to the respective adjoining parcels was derived from one Oceana Proctor, who on January 27, 1871, conveyed the alleged servient estate, lot No. 4, to the plaintiffs' ancestor in title by a deed "containing a covenant of general warranty." Twelve years later, in 1883, Oceana became the owner of the alleged dominant estate and in 1887 conveyed it to the defendant's ancestors in title. The defendant was attempting to tack on the period when Oceana traveled over lot No. 4 during the time she owned Goodspeed's lot. The court, after tracing the title of lot No. 4, ruled that the covenant of general warranty contained in Oceana's 1871 conveyance to the plaintiffs' ancestor estopped Oceana from claiming or exercising any right-of-way over the plaintiffs' land when she became the owner of the defendant's lot and equally barred the defendant from perfecting his claimed right-of-way.

■ The covenant of general warranty and the covenant of quiet enjoyment are considered to be substantially similar in their effect except when someone varies the language of either covenant. 4 Tiffany, *The Law of Real Property,* § 1010 at 276 (3d ed. 1975). However, the precise obligation assumed by an individual extending a covenant of warranty is not only that the covenantor is the true owner or that he is seised in fee with the right to convey but that he will defend and protect the convenantee against the rightful claims of all persons thereafter asserted. *Wilder v. Wilhite,*

190 Kan. 564, 376 P.2d 797 (1962). In Maupin, *Marketable Title to Real Estate* 321 (1896), the covenant of general warranty is expressed thus: " 'The said (grantor) covenants that he, his heirs and personal representatives, will forever warrant and defend the said property unto the grantee, his heirs, personal representatives and assigns, against the claims and demands of all persons whomsoever.' "

The Warwick city clerk has graciously supplied the court with a copy of Oceana's January 27, 1871 conveyance to Hodges; and although the deed contains the covenant of general warranty relied upon by the court in *Hodges v. Goodspeed,* it contains no covenant of quiet enjoyment.

Katarzyna's counsel has referred us to many cases in which courts have ruled that the use of the warranty deed does not preclude the grantor's assertion of adverse possession. Many of those cited are from the New England area and have been decided in the mid-1800s. Typical of most of the cases cited by Katarzyna is *Stearns v. Hendersass,* 63 Mass. (9 Cush.) 497 (1852), in which the court, in upholding the grantor's claim of adverse possession despite a conveyance by warranty deed, observed that since good title was conveyed by the deed, there was no breach of any covenant and no ground for estoppel since the acts of disseisin occurred after the transfer of title.

We have not taken the time to examine the various statutory dictates that may govern the extent of a grantor's obligation in the many cases cited by Katarzyna's counsel because of action taken by Rhode Island's Legislature at its January 1927 session when it specifically delineated the obligations undertaken by a grantor who conveys real estate by either a "warranty deed" or a conveyance "with warrant covenants." This legislation upon enactment became P.L. 1927, ch. 1056. Today, its pertinent portions can be found in G.L. 1956 (1969 Reenactment) §§ 34–11–15 and 34–11–16.

---

2. In 1912 the prescriptive period was reduced from twenty to ten years with the enactment of P.L. 1912, ch. 798.

■ Section 34–11–15 concerns the legal import of any deed that "substantially" follows the statutory form of a warranty deed that is set forth in § 34–11–12 whereas § 34–11–16 embraces within its provisions any conveyance of real estate containing the words "with warranty covenants." Both statutes specifically provide that whenever the statutory form of warranty deed is used or a deed conveys real estate "with warranty covenants," the grantor for himself, his heirs, executors, and administrators warrants with the grantee and his heirs and assigns that (1) the grantor at the time of the delivery of the deed is lawfully seised in fee simple of the granted premises; (2) the premises are then being conveyed free of all encumbrances; (3) the grantor then has good right, full power, and lawful authority to sell and convey the premises to the grantee; (4) the grantee and his heirs and assigns shall at all times after the delivery of the deed peaceably and quietly have and enjoy the deeded premises; and (5) the grantor and his heirs, executor, and administrator shall warrant and defend forever to the grantee and his heirs and assigns the deeded premises against all persons who may lawfully claim the same. Consequently, when in June 1928 Katarzyna and her husband conveyed the two-and-three-quarter-acre portion of their farmland "with WARRANTY COVENANTS" to Adam Marszalkowski, she guaranteed that Adam and his son, Theodore, and their heirs and assigns would enjoy the peaceful possession of the premises conveyed and also assured them that she would defend the premises against all lawful claims and demands.

It is our belief that when the General Assembly created the statutory covenants of (1) seisin, (2) freedom from encumbrances, (3) authority to sell, (4) peaceful enjoyment, and (5) warranty to defend, it intended to provide the grantee in a warranty deed or in a conveyance containing warranty covenants with a degree of protection not offered any other grantees. The first three covenants—seisin, freedom from encumbrances, and authority to sell—are covenants *in praesenti* which, if broken at all, are broken at the time of the delivery of the deed. *Brown v. Lober,* 75 Ill.2d 547, 552–53, 27 Ill.Dec. 780, 783, 389 N.E.2d 1188, 1191 (1979). In contrast, the covenants of quiet enjoyment and warranty of title are prospective in nature and come into play after the delivery of the deed. In light of the statutory mandates contained in § 34–11–16, specifically the covenants of quiet enjoyment and future defense of title, Katarzyna in our opinion is precluded from setting up any claim of adverse possession to the baseball field presently enjoyed by her grantee's grandchildren. *Bradford v. Burgess,* 20 R.I. 290, 297, 38 A. 975, 978 (1897).

The plaintiff's appeal is denied and dismissed, the judgment of the Superior Court is affirmed, and the papers in the case are to be remanded to the Superior Court.