Alfred D. LOCKE et al.

v.

Ellen Ball O'BRIEN et al.

Supreme Court of Rhode Island.

No. 90–400—Appeal.

July 6, 1992.

---

Dennis J. Roberts, II, Roberts, Carroll, Feldstein & Peirce, Providence, for plaintiff.

Richard E. Kyte, Jr., North Smithfield, for defendant.

## OPINION

WEISBERGER, Justice.

This case comes to us on appeal by the defendants from a judgment entered in the Superior Court after a nonjury trial quieting title in the plaintiffs. We affirm. The facts insofar as relevant to this appeal, drawn from the detailed findings made by the trial justice, are as follows.

On December 3, 1962, Alfred D. Locke and Louise H. Locke (hereinafter plaintiffs or the Lockes) purchased by warranty deed a parcel of land (hereinafter parcel A) in the town of New Shoreham, Block Island. (See Appendix.) Parcel A, along with land undisputedly owned by defendants (parcel B), was originally owned by Simon and Celia Ball. In 1902 the Balls conveyed parcel A to plaintiffs' predecessor in title, Mary Ann Steadman. The Ball–to–Steadman deed referred to the easterly boundary

as "a straight line running south between stubs now set forth on the north and south lines respectively" and further provided that "the grantee will and her heirs and assigns shall make and maintain a lawful boundary." The quantity description in that deed states that the parcel consists of "one acre more or less." In 1926 the boundary between the two parcels was demarcated along a wire fence 409.4 feet easterly from the mean high tide of the Great Salt Pond. With the fence marking the boundary, parcel A consists of approximately two acres. As of 1960 the boundary lay at the identical point described in 1926, although only the fence posts remained. As of 1985 vestiges of these fence posts were still in place, and they were again determined to be exactly 409.4 feet from the mean high tide of the Great Salt Pond.

In 1978 the Lockes became aware of a deed executed May 4, 1962, that purported to convey, in addition to parcel B, all of parcel A to defendants. In 1979 Alfred Locke, in an attempt to resolve the problem created by this deed, made an appointment with defendant O'Brien, which she failed to attend. Locke then sent her a letter requesting that she execute a quitclaim deed that would clear his title to parcel A. The defendant neither responded to the letter nor signed the quitclaim deed.

In 1984 plaintiffs commenced this action pursuant to G.L.1956 (1969 Reenactment) §§ 34–16–4 and 34–16–7.[1] In their answer

defendants raised as a defense the purported defect in the original deed in plaintiffs' chain of title (the discrepancy between the monument and the quantity description) and alleged in their counterclaim that they had acquired title to one acre of parcel A through adverse possession. (See Appendix.) Thus the central issue before the trial justice became the locus of the boundary between parcel A and parcel B. The trial justice construed the deeds in plaintiffs' chain of title and found that plaintiffs had good title to all of parcel A. He also found that defendants' deed was null and void "to the extent it purported to convey any of parcel A." He also concluded that defendants failed to meet the requirements of adverse possession. Finally, he found that the parties had acquiesced to the easterly boundary as marked by what was left of the cedar posts.

On appeal defendants raise two issues: (1) that the trial justice misconceived or overlooked material evidence of the grantor's intent in construing the 1902 Ball-to-Steadman deed and (2) that the trial justice erred as a matter of law in applying the doctrine of *Lewicki v. Marszalkowski*, 455 A.2d 307 (R.I.1983), to preclude their claim of adverse possession. We turn to the adverse possession claim first.

■ We agree with defendants that *Lewicki* does not apply to the case at bar. Its holding rests upon the application of a stat-

---

1. General Laws 1956 (1969 Reenactment) § 34–16–4 provides in pertinent part as follows:

"Action brought by person claiming through conveyance, devise, or inheritance.—Any person or persons claiming title to real estate or any interest or estate, legal or equitable, therein, including any warrantor in any deed or other instrument in the chain of title to such real estate, which title, interest or estate is based upon, or has come through, a deed * * * purporting to vest in such person * * * the whole title to such real estate, or any fractional portion thereof * * * may bring a civil action against all persons claiming, or who may claim, and against all persons appearing to have of record any adverse interest therein, to determine the validity of his or

their title or estate therein, to remove any cloud thereon and to affirm and quiet his or their title thereto."
Section 34–16–7 provided in pertinent part as follows:
"Presumption of lost grant by adverse possession.—Open, adverse, exclusive and uninterrupted possession and enjoyment by the plaintiff * * * of the real estate or his or their interest therein described in the complaint, for a period of at least ten (10) years, shall raise the rebuttable presumption in law and in fact of a lost grant, properly executed and delivered, effective to cure the defect or defects in plaintiff's title, as set forth in the complaint and/or to remove the cloud thereon, as it concerns any party named or referred to in said cause."

ute that was enacted in 1927. *See* annotations to G.L.1956 (1969 Reenactment) §§ 34–11–15 and –16.[2] The relevant transaction here—between Ball and Steadman—occurred in 1902, twenty-five years before the operative statute was passed. Thus *Lewicki* and the above-referenced statute do not apply to defendants' adverse possession claim.

■ Despite the trial justice's reliance upon the *Lewicki* doctrine, we cannot say that he was clearly wrong in concluding that defendants had failed to prove the elements of adverse possession. It is well settled that in order to establish adverse possession under § 34–7–1, a claimant's possession must "be actual, open, notorious, hostile, under claim of right, continuous, and exclusive." *Sherman v. Goloskie,* 95 R.I. 457, 465, 188 A.2d 79, 83 (1963). *See also Aud–War Realty Co. v. Ellis,* 557 A.2d 69, 70 (R.I.1989). A claimant must establish the indicia of adverse possession for a period of ten years. *See* § 34–7–1. Evidence of adverse possession must be proved by strict proof, that is, proof by clear and convincing evidence of each of the elements of adverse possession. *See, e.g., Samuel Nardone & Co. v. Bianchi,* 524 A.2d 1114 (R.I.1987); *Spangler v. Schaus,* 106 R.I. 795, 264 A.2d 161 (1970). We have consistently held that the evidence must be "by a preponderance of clear and positive evidence or by evidence that is unambiguous and affirmative in character." *Hilley v. Simmler,* 463 A.2d 1302, 1304 (R.I.1983). The trial justice found that the evidence presented "[fell] far short of the required showing" of the indicia of adverse possession. Our review of the record also fails to reveal any evidence from which the trial justice could have found that defendants took affirmative ac-

tion during the ten years preceding this action to indicate to plaintiffs that they were occupying a portion of parcel A in a manner hostile to plaintiffs' interest.

■ The defendants also contend that the trial justice misconceived or overlooked evidence regarding Celia Ball's intent to convey parcel A to Mary Ann Steadman in 1902. We find no merit in this contention. Instead of relying on the strength of their own title, defendants here attempt to rely on a purported defect in plaintiffs' title in order to advance their own claim of adverse possession. We have expressly rejected such a strategy in *Taffinder v. Thomas,* 119 R.I. 545, 381 A.2d 519 (1977) (in order to prevail on a claim of adverse possession, a claimant must establish his or her own title and may not rely upon a defect in the title of another). *See also Antuono v. Faraone,* 106 R.I. 721, 263 A.2d 111 (1970). Since defendants' argument concerns only the alleged defect in plaintiffs' title, we need not address the contention that the trial justice erred in construing the intent of a predecessor in plaintiffs' chain of title.

■ Assuming *arguendo* that plaintiffs' title was defective or that the trial justice misconceived or overlooked material evidence regarding the grantor's intent in the 1902 Ball–to–Steadman deed, the trial justice's ultimate conclusion that the parties acquiesced to the boundary was sufficient to support judgment quieting title in plaintiffs under § 34–16–4. In *Pacquin v. Guiorguiev,* 117 R.I. 239, 366 A.2d 169 (1976), we held a plaintiff could gain title to a defendant's property by operation of the doctrine of acquiescence despite the fact that defendant had record title. *Id.* at 243, 366 A.2d at 171. *Accord DiSanto v. De-*

2. In *Lewicki v. Marszalkowski,* 455 A.2d 307 (R.I.1983), we held that a grantor conveying real property in 1928 was precluded from claiming title to that same parcel against the grantee's successor by virtue of adverse possession pursuant to P.L.1927, ch. 1056 (now G.L.1956 (1969 Reenactment) §§ 34–11–15 and –16). That legislation, according to *Lewicki,* codified the prin-

ciple that the granting of warranty covenants includes statutory covenants of peaceful enjoyment and warranty to defend against future claims to title. The statute therefore bars grantors who conveyed by warranty deeds after 1927 from commencing adverse possession claims against their grantees.

*Bellis,* 55 R.I. 433, 437, 182 A. 488, 489–90 (1935); *DiMaio v. Ranaldi,* 49 R.I. 204, 205, 142 A. 145, 146 (1928). In effect the acts of the parties and their predecessors serve as a substitute for the actual record title. As we have noted, acquiescence for the requisite number of years is "conclusive evidence of an agreement to establish such a line and the parties will be precluded from claiming that the line so acquiesced in is not the true boundary." *Rosa v. Oliveira,* 115 R.I. 277, 278–79, 342 A.2d 601, 602 (1975). Proof of the grantor's intent was therefore immaterial to both the trial justice's determination of acquiescence and his ultimate decision to quiet title in plaintiffs.

■ The common law doctrine of acquiescence was first recognized by this court in *O'Donnell v. Penney,* 17 R.I. 164, 20 A. 305 (1890), wherein we held that owners of adjoining estates are precluded from denying a boundary line recognized by both owners for a length of time equal to that prescribed by the statute of limitations barring a right of reentry. This doctrine, in addition to being invoked when determining whether boundaries marked by physical objects will be given preference over boundary lines described in recorded title, also serves "the purpose of quieting titles, and preventing the uncertainty and confusion, and consequent litigation which would be likely to result from the disturbance of boundary lines so long established." *Id.* at 167, 20 A. at 306.

■ Absent evidence of an express agreement between the parties, *see, e.g.,* *LaFreniere v. Sprague,* 108 R.I. 43, 271 A.2d 819 (1970), a party alleging acquiescence must show that a boundary marker existed and that the parties recognized that boundary for a period equal to that prescribed in the statute of limitations to bar a reentry, or ten years. *Peloquin v. Ciaccia,* 413 A.2d 799 (R.I.1980); § 34–7–1. The element of recognition may be inferred from the silence of one party or their

predecessors in title who are aware of the boundary. *See, e.g., Peloquin,* 413 A.2d at 800; *Doyle v. Ralph,* 49 R.I. 155, 157, 141 A. 180, 181 (1928). Since acquiescence is a mixed question of law and fact, we disturb a trial justice's finding only in the limited circumstances where he is clearly wrong or overlooked or misconceived material evidence. *Morgan v. City of Warwick,* 510 A.2d 1297 (R.I.1986); *Fournier v. Fournier,* 479 A.2d 708 (R.I.1984). Of equal importance to the case at bar, we apply the same deferential standard to the trial justice's inferences drawn from the facts. *Sleboda v. Heirs at Law of Harris,* 508 A.2d 652, 658 (R.I.1986); *Casey v. Casey,* 494 A.2d 80, 82 (R.I.1985).

■ Applying these principles to the case at bar, we conclude that the trial justice correctly invoked the acquiescence doctrine and neither overlooked nor misconceived material evidence, both with respect to the existence of the fence or fence posts and with respect to the parties' recognition of the boundary. The trial justice found that there was

"[u]ncontradicted evidence that the line of fence posts has marked the easterly boundary of [parcel A] since at least 1960. There is also strong inferential evidence that that line of fence posts or a fence was in the same location in 1926, and further evidence that a fence was intended to mark that boundary in that language in the 1902 deed from the original grantors in the Lockes' chain of title, Simon and Celia Ball."

The defendants did not dispute the existence of the cedar posts for the relevant period or from 1974 until the suit was filed in 1984. Thus we conclude that the first part of the acquiescence test was amply supported by the evidence. The trial justice's findings also implicitly furnish adequate support for the conclusion that both parties had tacitly recognized the boundary since at least 1974. The trial justice found that the disputed portion of parcel A was wild and unimproved, that the fence posts had been on the land since their purchase,

and that the plaintiffs had always considered the posts to mark the boundary. The record is devoid of any evidence that the defendants took action to remove the fence posts or to challenge the plaintiffs' claim that those posts demarcated their property boundary. Such inaction, in the face of notice that the fence posts had existed, serves as sufficient recognition by the defendants of the boundary line, in our view, to satisfy the mutual-recognition element required in a determination of acquiescence. Finally, we again note that the defendants neither responded to the Lockes' request to sign the deed nor challenged the correctness of the proposed boundary. On these facts the trial justice was in effect constrained to find that the parties acquiesced in the boundary for the minimum time required by § 34-7-1.

For the reasons stated, the defendants' appeal is denied and dismissed and the judgment of the Superior Court is hereby affirmed. The papers in the case are remanded to the Superior Court.