DECISION
This matter was tried by the Court without a jury. Melanie Cahill ("Plaintiff") claims that the she has become the title owner of property, title to which is recorded in the name of her neighbor, Margaret P. Morrow ("Defendant"). The property is located in the Snug Harbor section of South Kingstown. The plaintiff made a claim of adverse possession under G.L. (1956) § 34-7-1. The trial commenced on February 23, 2007, at which time the Court viewed the property. Testimony was received on February 23, February 26, February 27, and May 31, 2007.[1]
 Findings of Fact 1. In the summer of 1971, Plaintiff's mother, Mary Cahill, purchased property located on Gooseberry Road identified as assessor's plat 88, lot 20, in the Town of South Kingstown.
 2. Beginning in 1971, Mary Cahill used the property as a summer residence, and shortly thereafter the Plaintiff became acquainted with the property. The property had been *Page 2 
rented during the non-summer months from 1971 through 1973, but Mary used it as her summer home until her death in August of 1975. At her death, the property was left to her four (4) children. The Plaintiff purchased the property from her siblings in October, 1977 and has owned lot 20 continuously since that date.
 3. The Defendant currently lives in Sleepy Hollow, New York. Defendant's late husband George and his two brothers purchased the Snug Harbor property in 1969. Lot 19, which is the subject of this dispute, was a vacant lot and titled in George's name. At the same time, lot 18, which was improved with two cottages, was purchased by George Morrow's brothers. The cottages on lot 18 were used by the Morrow families for summer vacations. Each year, Margaret and her late husband, together with their children, usually spent two weeks in each year at the cottages. Sometimes they stayed a little longer. In the off-season, the cottages were used as rental property, often to fishermen, until 1991, when lot 18 was sold. George Morrow continued to own lot 19 thereafter, but the Morrows no longer summered in Snug Harbor after the cottages were sold in 1991. The last time Defendant or her husband used the cottages on lot 18 was around 1985. At no time during their period of ownership did George Morrow or the Defendant, or anyone acting on their behalf, plant or maintain lot 19 in any manner, nor did they do anything to prevent the use of lot 19 by the Plaintiff. George Morrow died in 2003 after a long illness.
 4. Beginning shortly after her mother acquired lot 20 in 1971, and continuously thereafter to the present, the Plaintiff and her predecessor in title mowed and maintained the lawn areas on lot 19, and planted flower beds, gardens, trees and shrubbery thereon. A clothesline and lawn furniture was regularly maintained on lot 19. The lower area near *Page 3 
the driveway was used to park vehicles and that area, which would become wet at certain times of the year, was re-loamed and seeded by the Plaintiff. A trench was dug to improve the drainage. Beginning in 1987, lot 19 was used by the Plaintiff every summer for various family functions, wherein the guests would occupy lot 20 and significant portions of lot 19 for social purposes.
 5. The findings with regard to the Plaintiff's use of the property were established not only from the Plaintiff's own testimony, but from the credible testimony of several corroborating witnesses. Also, the Plaintiff introduced and identified many family photographs which identified the areas of lot 19 which the Plaintiff planted and maintained. Finally, the testimony with regard to aerial photographs from 1970, 1980, 1987, 1992, 1999 and 2003 also corroborate the testimony of the Plaintiff relative to the maintenance of the lawn area, the location of a clothesline and other features maintained on lot 19.
 6. Defendant's testimony, and that elicited from her brother and sister, did not in any convincing manner rebut the evidence of continuous and open use of lot 19 by the Plaintiff and her predecessors in title. The Plaintiff was at the Snug Harbor property only for approximately two weeks each summer from 1970 to 1985 and even less thereafter, often for a brief drive-by. The Defendant's brother was at lot 18 each month from 1975 to 1991, but his testimony was unconvincing when on cross-examination he was shown photographs of Plaintiff's maintenance and plantings on lot 19. Similarly, Defendant's sister denied observing flower beds or cultivated areas on lot 19, which testimony was not credible in light of the demonstrative evidence introduced by the Plaintiff. Defendant admitted that no one acting for herself, or her husband previously, ever maintained or *Page 4 
improved lot 19 in any manner.
 7. At sporadic and infrequent times between 1970 and 1991, children of the defendant and other neighborhood children would use lot 19 for recreational purposes, and the plaintiff did not prohibit such use.
 8. In July of 1997, Plaintiff made inquiry of George Morrow to determine if he would be interested in selling lot 19 to her. There was no response to this inquiry. Later, in the summer of 2002, Plaintiff made inquiry of Defendant's sister, Barbara Laraway, as to whether the Defendant would be interested in selling the vacant lot (lot 19) to her.
 Analysis and Conclusions of Law
In Rhode Island, an adverse possessor must establish that his possession was "actual, open, notorious, hostile, under claim of right, continuous and exclusive" for at least ten years. Locke v. O'Brien,610 A.2d 552, 555 (R.I. 1992); see G.L. (1956) § 34-7-1. The party making such a claim must establish each of these elements by clear and convincing evidence. Tavares v. Beck, 814 A.2d 346, 350 (R.I. 2003).
Defendant has argued that having established that Plaintiff made an inquiry relative to purchase of the property in 1997, and renewed that expression of interest in 2002, the Court should conclude that the Plaintiff has failed to satisfy the required findings necessary to establish a claim of adverse possession. Defendant believes that the making of such inquiry is proof that the Plaintiff lacks the element of "hostility" or "claim of right" which is a necessary statutory prerequisite. As to the "claim of right" standard, the Supreme Court has clarified that this element focuses on claimants' "objective manifestations of adverse use rather than on the claimants' knowledge that they lacked colorable legal title." Tavares, 814 A.2d at 351. "[E]ven when the claimants know they are nothing more than black-hearted trespassers, they can still *Page 5 
adversely possess the property in question under a claim or right to do so if they use it openly, notoriously, and in a manner that is adverse to the true owner's rights for the requisite ten-year period."Id. The fact that the Plaintiff, beginning in 1997, inquired as to the Morrows' willingness to consider a sale of the lot to her may certainly show that she was aware of the Morrows' record title. That alone, however, does not negate her claim of right, as that term has been defined by our Supreme Court. Neither does such proof negate the element of "hostility." A person attempting to obtain title through adverse possession "need not be under a good faith mistake that he or she had legal title to the land." Id. (quoting 16 Powell on Real Property, § 91.05[1] at 91-23 (2000)). An adverse possessor must establish only a use "inconsistent with the right of the owner, without permission asked or given." Id.
Based on this trial record, even assuming that the Plaintiff's inquiry is circumstantial evidence of her knowledge that George Morrow, and subsequently Margaret, were the legal title holders of parcel 19, that does not destroy the viability of this adverse possession claim.[2]
Furthermore, even if somehow the expression of interest in purchasing lot 19, made initially in 1997, stopped the running of the ten year period under G.L. § 34-7-1, the evidence was overwhelming that the Plaintiff and her predecessor in title had commenced the requisite ten-year period beginning in 1971.
Plaintiff has met her burden of establishing all of the elements of an adverse possession claim to lot 19 by her and her mother's continuous and uninterrupted use of the parcel for well in excess of ten years. She maintained the property, planted and improved the property with shrubs, trees, and other plantings, sought drainage control measures, and used the property as if it *Page 6 
were her own since 1971. She established that use not only by her own testimony, but as corroborated by other witnesses, photographs, and expert testimony relative to the interpretation of aerial photographs. In sum, the Plaintiff, and her mother previous to the Plaintiff's ownership of lot 20, acted toward lot 19 as would an "average" owner, taking into account the topography and condition of the property.See Anthony v. Searle, 681 A.2d 892 (R.I. 1996). On the other hand, the Defendant failed to show any use of lot 19 in any fashion similar to the use established by the Plaintiff. Although there was some evidence that the children of the Morrows, and perhaps others, intermittently played on the vacant lot, such incidental and sporadic use does not serve to interrupt the continuous and exclusive use established by the Plaintiff.See Lee v. Raymond, 456 A.2d 1179, 1183-84 (R.I. 1983); Gammons v.Caswell, 447 A.2d 361, 368 (R.I. 1982).
 Conclusion
Based upon the Court's findings of fact and conclusions of law, judgment shall enter for the Plaintiff on her claim of adverse possession as to Assessor's Plat 88, Lot 19. Plaintiff's counsel shall prepare an appropriate form of judgment reflecting the conclusion set forth above.
[1] The gap between the February and May trial sessions was occasioned by the fact that certain evidence, in the form of aerial photographs, was not shared with Defendant's counsel in advance of trial. The Court continued the trial sessions to afford the Defendant an opportunity to review that evidence and engage an expert, if necessary, to respond to that evidence.
[2] Plaintiff has also cited to authority from other jurisdictions that even an explicit offer to purchase the disputed parcel should be deemed an attempt to compromise a disputed claim and should not defeat an otherwise valid claim of adverse possession. See, e.g.,Richterberg v. Wittich Memorial Church, 222 F.Supp. 324, 328 (W.D. Okla. 1963); Manning v. Gregoire, 191 P. 657, 658 (Or. 1920). *Page 1