**William J. NYE**

v.

**Paul G. BROUSSEAU et al.**

**No. 2009–20–Appeal.**

Supreme Court of Rhode Island.

April 29, 2010.

Charles D. Blackman, Esq., Providence, for Plaintiff.

Bruce E. Vealey, Esq., for Defendant.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, and ROBINSON, JJ.

## OPINION

Justice FLAHERTY, for the Court.

"Good fences make good neighbours." [1]

William J. Nye appeals from a Superior Court judgment that fixed the boundary dividing his property from that of his neighbors, the defendants, Paul G. Brousseau and Susan J. Brousseau, enjoined Nye from trespassing on the Brousseaus' property, and awarded the Brousseaus damages on the basis of breach of contract. This case came before the Court for oral argument on April 8, 2010, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. After hearing the parties' arguments and considering the memoranda they submitted, we are satisfied that cause has not been shown, and we proceed to decide this appeal without further briefing or argument. For the reasons set forth in this opinion, we affirm the Superior Court's judgment in part and vacate it in part.

## I

### Facts and Travel

Nye's parents, now deceased, purchased the property at 251 Tiffany Avenue, War-

---

1. Robert Frost, "Mending Wall," *North of Boston* (1914), quoted in The Oxford Dictionary of Modern Quotations 86 (Tony Augarde ed. 1991).

wick, Rhode Island in 1964. Nye himself resided at that address during his childhood, until 1977. As an adult, he resumed living at 251 Tiffany Avenue in 1992, until the present. He purchased the property from his father's estate in March 2003.

Between 1964 and 1966, Nye's mother planted evergreen bushes, known as Japanese yews, in a row extending from the northern to the southern end of the property and on the western edge of 251 Tiffany Avenue, abutting the next-door property of 265 Tiffany Avenue. The bushes are located adjacent to the properties' respective driveways. Over the years, the yews grew to be quite tall, at times reaching in excess of fifteen feet.

In 1979, Paul and V. Tang Lintereur purchased the property at 265 Tiffany Avenue. According to an affidavit signed by the Lintereurs, the couple did not consider themselves to be the owners of these bushes when they lived at that address and "did not consider the boundary bushes to be part of [their] former property." Rather, they "always believed [that the Nyes] owned the boundary bushes." According to Nye, he, too, "always considered the land to the east of the evergreen * * * to be our land."

In 2003, the Lintereurs sold the property at 265 Tiffany Avenue to the Brousseaus. In September or October 2003, Mr. Brousseau asked Nye if he could trim and remove bushes to improve his visibility while he exited and entered his driveway. Nye said that he appreciated that Brousseau asked for his permission before trimming the bushes, and so he assented to Brousseau's pruning and removal of those bushes that obscured the view from the Brousseaus' driveway. Later, in the spring of 2004, Brousseau discussed trimming the bushes again to shorten them, and Nye again agreed. Soon after, the pair discussed removing debris from the corner of their respective properties, extracting stumps from between their garages, and replacing a couple of defoliated yews with arborvitae shrubbery.

According to Brousseau, Nye assumed that the boundary between their properties "was somewhere near the bushes in a north-south direction," but that Nye thought that a survey should be conducted. Brousseau testified that he expressed his concern about the expense of a survey, and so Nye agreed to contribute half of the cost of the survey.[2] According to Nye, he "was being generous" when he agreed to pay half the survey's cost.

In early September 2005, Nye and Brousseau again discussed the maintenance of the row of bushes. During this conversation, they agreed to remove the bushes at the properties' southern end and replace them with arborvitae. Brousseau cut and removed the bushes, leaving several stumps near the adjacent driveways. Nye assisted Brousseau in removing one of the stumps, but Brousseau decided to hire a professional to remove the remaining stumps.

Sometime later, Brousseau broached the topic of extending his retaining wall, which, according to Brousseau, prompted Nye to again suggest that a survey be conducted before any extension was initiated. Brousseau agreed to have a survey conducted, and he hired a surveyor who completed the survey in November 2005. The surveyor discovered a granite boundary marker in the southeastern corner of the Brousseaus' property and placed a metal stake in a portion of Nye's driveway.

---

2. Nye also said that Brousseau asked him to pay only a quarter of the cost of the survey because the surveyor would be surveying the entirety of the Brousseaus' lot, most of which had nothing to do with the boundary issue.

The surveyor concluded that a portion of Nye's driveway and a portion of the southernmost bushes were actually on the Brousseaus' property. Brousseau provided Nye with a copy of the survey, but Nye disputed its accuracy and declined to reimburse the Brousseaus for any portion of the survey's cost. Nye maintained that "[i]t was [the Brousseaus'] project" and "it wasn't my survey." According to Nye, no agreement existed "as to payment."

Nye and Brousseau also disputed the placement of trash and recycling bins in the vicinity of what each perceived to be the boundary between their properties. Brousseau asked Nye to remove his trash cans, but, according to Brousseau, Nye refused. On one occasion, Brousseau moved Nye's trash cans to "the other side of the survey line," but Nye moved them back because they were damaging the grass. Nye also said that he showed Brousseau the affidavit from the Lintereurs memorializing their belief as to the location of the boundary, but Brousseau did not see any significance in that document. The men exchanged words, and Brousseau described himself as "emotional" at that time. According to Brousseau, Nye then informed him that he was going to have his own survey conducted.

Later, at the end of June 2006, Nye again contacted the Warwick police in connection with the dispute about the proper location of the trash and recycling containers. Brousseau showed the responding police officer a copy of the survey indicating that he owned the land in question, and the officer talked to Nye and departed. As a result, Nye moved his trash cans.

On August 14, 2006, Brousseau trimmed the remaining yews.[3] According to Brousseau, he placed the branches that he cut on the side of his driveway. Nye took issue

with this work because he said that he had refused Brousseau's request to cut those bushes. In response, Nye contacted the Warwick Police Department "to make a record of the event." An officer came and talked to both parties, and, according to Nye, "that was basically the end of it."

Nye filed a *pro se* complaint against the Brousseaus in Superior Court on August 9, 2006, in which he alleged that he had requested that the Brousseaus obtain a survey of their property and asserted that he "contest[ed] the location of the disputed boundary." He claimed that "the boundary * * * between the Nye real estate and the Brousseau real estate is a line, which follows a row of bushes." He alleged that before the survey was completed, the Brousseaus did not believe that the area included within their surveyed boundary was part of their property. Nye further alleged that the Brousseaus are "liable in trespass for traveling in, and beyond, the disputed area, and for moving [his] recycling bins." He claimed that the parties "and former owners and users of both properties have demonstrated mutual acquiescence regarding their respect of [Nye's] asserted boundary." He sought a temporary restraining order and permanent injunctive relief to prevent the Brousseaus "from trespass of the asserted boundary line," "[a]n order declaring the true boundary line," and "[a]ny other such equitable relief as the Court may allow."

As part of their answer to Nye's complaint, the Brousseaus raised two counterclaims. First, they sought a declaratory judgment that the boundary line dividing the two properties was as determined in the survey conducted in November 2005. Second, they sought a temporary restraining order and injunction preventing Nye from entering their property, placing his

---

**3.** Currently, seven of the original Japanese yews and two stumps remain.

personal property upon it, or parking motor vehicles on their property. For both counts of the counterclaim, the Brousseaus also requested that they "be granted such other and further relief as [the Superior Court] shall deem appropriate and the circumstances of the case may require."

A nonjury trial was held before a justice of the Superior Court on June 16, 17, 19, and 30, 2008, and July 7, 2008. Nye represented himself during these proceedings, while the Brousseaus were represented by counsel.[4] Nye called several witnesses, including his brother, a landscape arborist who testified about the value of the shrubbery, the Brousseaus' surveyor, who was under subpoena, and himself. The trial justice allowed video recordings of the Lintereurs' depositions into evidence. At the close of plaintiff's case, the Brousseaus moved for judgment as a matter of law. In response to defendants' motion, Nye argued to the trial justice that the boundary should run along the edge of the bushes' trunks so that each trunk is entirely on his property, but he acknowledged that that was the "ideal location" and that a boundary running through the center of the trunks was "a possible solution." The trial justice denied the motion because he wished to hear testimony from the Brousseaus, as well.

The trial justice's decision was entered on September 23, 2008. He issued an injunction preventing the Brousseaus "from passing onto Mr. Nye's property." He also ruled that because Nye "demonstrated that at the time of the August 2006 trimming, he was in possession of one-half of the shrubs near the border," Brousseau converted Nye's portion of ownership in the shrubbery when he undertook "his significant trimming" on August 14, 2006. Taking into consideration the positive ef-

fects that Brousseau's trimming had on the shrubbery, the trial justice set the value of the damage from the trimming of the nine shrubs at $2,200, and he awarded Nye damages in the amount of $1,100, reflecting his one-half ownership of the shrubbery.

With respect to the boundary question, the trial justice ruled that the row of shrubbery was "sufficiently obvious to command notice of [Nye's] claim of ownership." Therefore, because Nye "demonstrated that the row of shrubbery has existed for a sufficient period of time," the shrubbery represented the boundary between the properties under the doctrine of title by acquiescence. The trial justice found that

"[t]he new boundary shall run from the granite bound, which is the northernmost border of the two properties, southward until the northernmost yew, then turning and running along the centerline of the yews to the southernmost yew, then turning slightly eastward and running directly to the point which is the edge of Mr. Nye's paved driveway at its intersection with Tiffany Avenue."

However, the trial justice went on to say, "Any property interest clarified, confirmed or conveyed to Mr. Nye by this Decision shall be invalid until it is set forth in a Judgment, duly approved by the Court and sufficiently describing this line." He directed Nye to prepare a survey description for inclusion in the final judgment.

Acknowledging that the Brousseaus "prayed for an award of any other relief that the Court may deem equitable and just," the trial justice ruled that "[t]he Brousseaus established that Mr. Nye breached an agreement to pay for one-half of the cost of the surveyor's bill" and "[a]n

4. Counsel filed an entry of appearance in Superior Court on behalf of Nye on December 22, 2008. That attorney represents Nye before this Court.

award of costs for the [Brousseaus] is most appropriate here." Therefore, in recognition of the value of this survey to Nye in preparation for and during the trial proceedings, the trial justice ruled that the Brousseaus were to "be awarded one-half of the cost of the survey as Mr. Nye originally agreed." Finally, he enjoined Nye from entering the Brousseaus' "real estate without the consent of either Mr. or Mrs. Brousseau."[5]

Nye filed a motion to amend the decision on September 29, 2008, which the trial justice denied. Final judgment was entered on October 29, 2008. To comply with the trial justice's decision, Nye prepared and submitted an order with an attached surveyor's description of the new boundary line to the Superior Court on November 12, 2008. This legal description of the border was reflected in the amended final judgment that was entered on April 30, 2009.[6] Nye timely appealed to this Court.

## II

### Issues on Appeal

Nye raises three issues on appeal. First, he argues that, although the trial justice correctly ruled that the doctrine of acquiescence applied, he "erred in fixing the boundary between the two properties through the center of the trunks of the first and last bushes, rather than with reference to where the bushes were before the Brousseaus removed them in 2004, and by not locating the bushes entirely on the Nye property." Second, he contends that the trial justice erred when he issued an injunction preventing him from entering the Brousseaus' property without their consent. Third, he argues that the trial justice erred when he entered judgment in favor of the Brousseaus on an "unasserted" breach-of-contract claim.

## III

### Standard of Review

■ We "will not disturb the findings of a trial justice sitting without a jury in a civil matter 'unless such findings are clearly erroneous or unless the trial justice misconceived or overlooked material evidence or unless the decision fails to do substantial justice between the parties.'" *Union Station Associates v. Rossi*, 862 A.2d 185, 193 (R.I.2004) (quoting *Harris v. Town of Lincoln*, 668 A.2d 321, 326 (R.I. 1995)). This is so because "[t]he task of determining the credibility of witnesses is peculiarly the function of the trial justice when sitting without a jury." *Houde v. State*, 973 A.2d 493, 498 (R.I.2009) (quoting *McEntee v. Davis*, 861 A.2d 459, 464 (R.I. 2004)). This Court also applies a deferential standard of review to the trial justice's "resolution of mixed questions of law and fact, as well as the inferences and conclusions drawn from the testimony and evidence * * *." *Id.* (quoting *Narragansett Electric Co. v. Carbone*, 898 A.2d 87, 97 (R.I.2006)). However, we review questions of law *de novo*. *Id.* (citing *Fleet National Bank v. 175 Post Road, LLC*, 851 A.2d 267, 273 (R.I.2004)).

## IV

### Discussion

### A

### Boundary Determination

■ Under the doctrine of acquiescence, "even when there has been no ex-

---

**5.** The trial justice also enjoined Mr. Brousseau from entering "Mr. Nye's real estate without the consent of Mr. Nye."

**6.** In an order that was entered on December 4, 2008, the trial justice appears to have denied Nye's filed survey map as insufficient to comply with the decision's requirement that he submit a survey description.

press agreement, adjoining landowners are 'precluded from denying a boundary line recognized by both owners for a length of time equal to that prescribed by the statute of limitations barring a right of reentry.'" *Acampora v. Pearson,* 899 A.2d 459, 464 (R.I.2006) (quoting *Locke v. O'Brien,* 610 A.2d 552, 556 (R.I.1992)); *see also O'Donnell v. Penney,* 17 R.I. 164, 167, 20 A. 305, 306 (1890) (recognizing doctrine of acquiescence for the first time in Rhode Island). "A determination of acquiescence is a mixed question of law and fact." *Acampora,* 899 A.2d at 462 (citing *Locke,* 610 A.2d at 556). Specifically, "[a]lthough, 'the issue of what constitute[s] the boundaries of a parcel of land is a question of law, the determination of where such boundaries are is a question of fact.'" *Norton v. Courtemanche,* 798 A.2d 925, 932 (R.I.2002) (quoting *Rosa v. Oliveira,* 115 R.I. 277, 279, 342 A.2d 601, 602 (1975)); *see DeCosta v. DeCosta,* 819 A.2d 1261, 1265 (R.I.2003) (vesting title in the entirety of the shrubbery that served as a boundary under the doctrine of acquiescence in the party who "located and planted the shrubbery," but remanding for a declaration of *"where* the hedgerow originally was located") (emphasis added).

■ Nye does not find fault with the trial justice's determination that the yews and arborvitae constituted the boundary between his and the Brousseaus' property under the doctrine of acquiescence. Consequently, he does not challenge certain findings of fact that the trial justice made in the context of determining this mixed question of law and fact, such as "whether the boundary is sufficiently obvious to command notice." *Acampora,* 899 A.2d at 465. He does, however, challenge "where" the trial justice determined the boundary to be. Nye argues that the proper boundary should hug the outside edge of the trunks of the shrubs so that the entire circumference of the trunks rests on his property. Because this is a question of fact, we afford deference to the trial justice's finding on this issue. Applying that standard of review, and after careful review of the record, it is our opinion that the trial justice did not misconceive or overlook material evidence when he determined that the boundary should bisect the trunks of the bushes.

In making findings of fact to support his decision, the trial justice considered the testimony of the witnesses and made several credibility determinations. He found that Nye "used the driveway and land up to the shrubbery." Additionally, the trial justice found that the shrubs "were rarely maintained." He perceived Nye's testimony to be "obviously self-serving," but "credible." As for Mr. Brousseau, the trial justice found him to be "highly credible." The trial justice acknowledged the Lintereurs' deposition testimony that they "'assumed' that the shrubbery was the border" and also that Nye's father never objected to "Mr. Lintereur trimming the bushes."

Nye asserts that "there was certainly not any evidence to suggest that the Lintereurs or the Brousseaus exercised dominion and control of the property up to the centerline of the bushes—as though someone occasionally crawled under the bushes up to the centerline. People do not do that." However, there was no evidence that Nye exercised complete dominion of the entirety of the shrubbery to support his contention that he is entitled to a boundary determination that places the shrubbery completely on his property. For example, Nye did not maintain the bushes on the Brousseaus' side of the property; in fact, he rarely maintained the shrubbery at all. In addition, the Lintereurs and Brousseaus both trimmed the shrubbery that faced their property.

An authoritative treatise has said that mutual acceptance of the boundary line "is an objective test, without regard to what either party knew or thought." 9 Richard R. Powell, *Powell on Real Property* § 68.05[6][a] at 68–29, 68–30 (Michael Allen Wolf ed. 2000). Therefore, although Nye insists that he always believed that the shrubbery belonged to his family and the Lintereurs' affidavit contains the statement that they "always believed [that the Nyes] owned the boundary bushes," the trial justice's boundary determination is consistent with an objective factual determination of the location of the boundary. Based on the actions of the parties and the former owners of the respective properties in maintaining each side of the shrubbery, we cannot say that the trial justice's resolution of where the boundary runs was clearly wrong.

## B

### Injunction Against Nye

■■■ "A party seeking injunctive relief 'must demonstrate that it stands to suffer some irreparable harm that is presently threatened or imminent and for which no adequate legal remedy exists to restore that plaintiff to its rightful position.'" *National Lumber & Building Materials Co. v. Langevin,* 798 A.2d 429, 434 (R.I.2002) (quoting *Fund for Community Progress v. United Way of Southeastern New England,* 695 A.2d 517, 521 (R.I. 1997)). "Irreparable injury must be either 'presently threatened' or 'imminent'; injuries that are prospective only and might never occur cannot form the basis of a permanent injunction." *Id.* (quoting *Rhode Island Turnpike & Bridge Authority v. Cohen,* 433 A.2d 179, 182 (R.I.1981)). Nye argues that there is no support for the permanent injunction imposed on him because "[t]here was no evidence that [he] ha[d] ever trespassed on the Brousseau

property beyond the point that the Court agreed had become part of the Nye property." Therefore, he maintains that he presents no actual threat of imminent irreparable injury. We agree with Nye that the injunction against him is unnecessary.

■■■ "When reviewing the grant or denial of a permanent injunction, we will reverse the lower court on appeal only 'when it can be shown that the trial justice misapplied the law, misconceived or overlooked material evidence or made factual findings that were clearly wrong.'" *Holden v. Salvadore,* 964 A.2d 508, 512–13 (R.I.2009) (quoting *Renaissance Development Corp. v. Universal Properties Group. Inc.,* 821 A.2d 233, 236 (R.I.2003)). Currently, the amended final judgment reflects the boundary description as submitted by Nye in accordance with the trial justice's decision. Whatever imminent injury that the trial justice may have perceived at the time that he issued the injunction does not exist at this time, because the portion of the property that the Brousseaus challenged now belongs to Nye. This has been the case since the trial justice approved Nye's legal description of the boundary in accordance with the decision and incorporated it into the amended final judgment. As a result, there no longer is any imminent threat that Nye will trespass on the Brousseaus' property. Thus, we hold that the permanent injunction that continues to be in force against Nye is no longer called for, and that it should have been vacated when the trial justice approved Nye's submitted legal description of the boundary.

## C

### Damages for Breach of Agreement

■■■ Finally, Nye argues that the trial justice erred when he awarded the Brousseaus damages based on his finding that

Nye breached the parties' agreement that they would share the cost of the survey. He maintains that he "was not on notice that this relief was within the realm of possibility" by the language of the counterclaim and that as a result he "did not argue his side of the story on this apparent non-issue." Although Nye did argue that there was no agreement about payment of the cost of the survey, maintaining that he was simply being "generous" in his offer to pay half the cost, and this statement was part of the evidence during the trial, we hold that the boilerplate language of the Brousseaus' counterclaim was not a sufficient basis for the trial justice's award in their favor for monetary damages.

In count one of their counterclaim, the Brousseaus alleged that the survey completed for their property on November 15, 2005, "delineate[d] the boundary lines of the parties' respective properties," and requested that they "be granted such other and further relief as [the Superior Court] shall deem appropriate and the circumstances of the case may require." The trial justice determined that an award of damages in favor of the Brousseaus for half the cost of the survey was appropriate in light of the circumstances of the case because Nye "met with [the surveyor], subpoenaed [the surveyor] for trial, and had [the surveyor] wait for several days to testify." He further found that the "survey was used as the basis for [the landscape arborist] to prepare his report."

 Essentially, Nye argues before this Court that the trial justice erroneously awarded these damages *sua sponte*. We agree; "[o]ur caselaw consistently has mandated that when a trial justice considers and rules on an issue *sua sponte*, the parties must be afforded notice of the issue and allowed an opportunity to present evidence and argue against it." *Catucci v. Pacheco*, 866 A.2d 509, 515 (R.I.2005) (cit-

ing *Vargas Manufacturing Co. v. Friedman*, 661 A.2d 48, 55 (R.I.1995)) (holding that the trial justice erred when he *sua sponte* added additional defendants as parties "at the close of plaintiff's case" and defendants "were not prepared to offer any witnesses or otherwise defend"). In short, "a party should not be granted relief that it did not request." *Providence Journal Co. v. Convention Center Authority*, 824 A.2d 1246, 1248 (R.I.2003) (holding that the trial justice erred when she ordered unrequested redactions of certain information from several contracts) (citing *Direct Action for Rights and Equality v. Gannon*, 713 A.2d 218, 225 (R.I.1998); *Vargas Manufacturing Co.*, 661 A.2d at 55, and *Santos v. Santos*, 568 A.2d 1010, 1011 (R.I.1990)); *see Vargas Manufacturing Co.*, 661 A.2d at 54–55 (holding that the trial justice erred when he awarded punitive damages for threats amounting to the crime of extortion although the defendants mentioned and requested only punitive damages for knowing, intentional, and willful misrepresentations).

This Court has noted that "[a]ppellate courts are especially hesitant to read a particular claim into a complaint's general boilerplate prayer for relief." *Bandoni v. State*, 715 A.2d 580, 596 (R.I.1998) (citing *Thomas R.W. v. Massachusetts Department of Education*, 130 F.3d 477, 480 (1st Cir.1997)). In *Bandoni*, this Court viewed consideration of an award of declaratory and injunctive relief as "inappropriate" because it was not sought in the complaint, despite the complaint's general language that "prayed for monetary damages and 'all such other relief deemed meet and just by this Honorable Court.'" *Id.* at 596. We characterized the complaint's "general boilerplate language [as] superfluous and simply insufficient to support any claim upon which other relief may be granted." *Id.* at 597.

Here, the similarly general boilerplate language in the Brousseaus' counterclaim cannot support an award of damages for breach of agreement. The Brousseaus' counterclaim was restricted to seeking declaratory and injunctive relief; nowhere does it allege the breach of an agreement to share the cost of a surveyor, nor does it request monetary damages. *See Bandoni,* 715 A.2d at 596–97. In addition, the Brousseaus were free to file a motion under Rule 15 of the Superior Court Rules of Civil Procedure to conform the pleadings to the evidence at trial regarding the alleged agreement between the parties to share the expense of the survey, but they did not do so. Therefore, we hold that the trial justice erroneously granted the Brousseaus relief that they did not request when he awarded them damages for a portion of the surveyor's fees. *See Providence Journal Co.,* 824 A.2d at 1248.

## IV

### Conclusion

We affirm the Superior Court judgment in part and vacate the judgment in part. The record in this case shall be remanded to that court.

Justice Indeglia took no part in the consideration or decision of this appeal.