Anita ACAMPORA

v.

Thomas R. PEARSON et al.

No. 2005–299–Appeal.

Supreme Court of Rhode Island.

June 6, 2006.

Neil P. Philbin, Esq., Peace Dale, for Plaintiff.

John J. Flanagan, Esq., Norfolk, MA, for Defendant.

Present: WILLIAMS, C.J.,
GOLDBERG, FLAHERTY, SUTTELL,
and ROBINSON, JJ.

## OPINION

Justice FLAHERTY, for the Court.

In this conflict between neighbors over the location of a common boundary, the defendants, Thomas and Linda Pearson, appeal the entry of judgment by a trial justice of the Superior Court in favor of the plaintiff, Anita Acampora, and against the counterclaims of the Pearsons. Acampora and the Pearsons own abutting waterfront lots on Seaside Drive in Jamestown. Acampora purchased her lot, No. 19, as well as the dwelling house thereon in 1980 from John and Kate Card.[1] The Pearsons did not acquire their property, lot No. 18, until 2001.[2] Lot No. 18 lies to the north of lot No. 19. Acampora testified that when she and her late husband purchased lot No. 19 there were three small evergreen-type trees growing between her property and lot No. 18. Those trees are now fifteen to eighteen feet tall.

Acampora said that before she purchased the property, the Cards customarily had cut the lawn several feet beyond the evergreens. She also testified, over objection, that the Cards told her that lot No. 19 extended "a little" to the north of the trees. Acampora also said that after purchasing lot No. 19 and moving into the house on the property in 1980, she and her family regularly mowed and fertilized the lawn up to twelve feet past the row of evergreens and used that area as their own for various recreational activities. Also, in 1987, Acampora and her husband

planted a row of thirteen or fourteen arborvitae shrubs just to the east of the evergreens. They also built a shed in 1994, and placed it between two of the evergreens.

Lot No. 18 was undeveloped when the Pearsons acquired it in 2001. Mr. Pearson testified that he and his wife wanted to build a home on the property, but realized that they would have to deal with a variety of setback limitations and septic-system regulations. The Pearsons received a survey of their land at the closing, but the accuracy of the survey was called into question when another neighbor to the north expressed concern that the Pearsons were encroaching upon his land. The Pearsons then commissioned engineer Philip Mancini to survey the property. They also communicated with Acampora and expressed their desire to cut down the evergreen trees, which they said obstructed their view of the water. In response, Acampora filed a complaint in Superior Court in which she alleged that she owned the evergreens as well as the land several feet beyond them by virtue of her warranty deed from John and Kate Card. Alternatively, Acampora claimed ownership of the disputed portion of land by adverse possession for the requisite statutory period. Acampora asked the court to issue a temporary restraining order and a preliminary injunction against the Pearsons. The Pearsons counterclaimed and requested that the court declare that Acampora was encroaching upon their property.

After a trial on the merits, during which the trial justice took a view of the property in dispute, judgment was entered in favor

---

1. Acampora's property is described as lot No. 19 on Jamestown Tax Assessor's Plat 14. The Cards lived in the dwelling house before they sold the property to the Acamporas.

2. Richard and Donna Rozzerro conveyed lot No. 18 to the Pearsons. However, it appears that the Rozzerros had owned the land for only a short period. They purchased it from Leo and Shirley Damboise, who had owned the property from at least 1989 through 2000.

of Acampora and against the Pearsons. The trial justice found by clear and convincing evidence that Acampora and the Pearsons' predecessors in title had acquiesced in a boundary marked by the evergreens and the arborvitae for at least ten years. Accordingly, he ordered that the boundary line "shall run down the line of the arborvitaes and then along a line two feet to the north of the evergreens, extending down to Narragansett Bay."

On appeal, the Pearsons advance a number of challenges to the trial justice's decision. They argue that it was error to apply a theory of acquiescence to resolve this boundary dispute in light of the credible testimony their expert witness offered with respect to the actual boundary lines described in the parties' deeds. They also contend that the trial justice erred when he allowed Ms. Acampora to give hearsay testimony with regard to certain statements that Mr. Card, her predecessor in title, made to her. Finally, the Pearsons contend that Acampora failed to prove acquiescence by clear and convincing evidence because the alleged boundary was not obvious and the parties did not intend for the bushes or trees to serve as a boundary.

## Standard of Review

■ A determination of acquiescence is a mixed question of law and fact. *Locke v. O'Brien*, 610 A.2d 552, 556 (R.I.1992). Therefore, we will disturb a trial justice's finding of acquiescence "only in the limited circumstances where he is clearly wrong or overlooked or misconceived material evidence." *Id.* We also apply this deferential standard to the findings of adverse possession by a trial court sitting without a jury. *Anthony v. Searle*, 681 A.2d 892, 898 (R.I.1996).

## Analysis

### I

### Expert Witness

■ Philip Mancini, who is a professional engineer, testified as an expert witness for the Pearsons. He opined that the proper way to resurvey a parcel is to use the best evidence currently available to physically locate the lot lines originally set by the creator of the plat. In an effort to do that, Mr. Mancini went to the site and located granite markers, which he assumed to have been placed on the land by E. Newman, the engineer who originally surveyed the plat. He then used geometric calculations to plot out the various lots. The Pearsons argue that this survey unmistakably shows that the evergreens are on their property. Acampora also offered a survey into evidence, but Mancini criticized its conclusions. He testified that that survey was off by several feet because it was based on an imprecise measurement from a stone wall on another lot. The trial justice found Mr. Mancini's testimony to be credible, but held that it did not avail the Pearsons in the resolution of this dispute because the real issue was whether the parties had acquiesced in a different boundary.

In *Rosa v. Oliveira*, 115 R.I. 277, 284, 342 A.2d 601, 605 (1975), the owners of a residential lot brought an action against an abutter seeking injunctive relief and a determination of the location of a common boundary line. A family member of the plaintiffs' predecessor in title testified that as early as 1904 or 1905, when her mother purchased the property, a wire and board fence extended between the two properties. *Id.* at 279–80, 342 A.2d at 603. She also said that her family made full use of the property up to the fence as though it were their own, and that no one ever challenged their use of that land. *Id.* at 280, 342 A.2d at 603. There was also conflict-

ing testimony from three expert witnesses, each of whom had prepared a survey of the land, studied the recorded documents, and offered their opinions about the true location of the boundary line. *Id.* at 282–83, 342 A.2d at 604. The trial justice applied the doctrine of acquiescence and found that the fence, which had existed since at least 1904, served as the dividing line between the properties. *Id.* at 284, 342 A.2d at 605. We reviewed the trial justice's decision and held that "[a]ny difference between the experts as to the location of the division line as shown by the deeds and plats is completely immaterial in the light of the trial justice's finding as to the fence line, since he found that the case presently under review falls squarely within the ambit of the rule [of acquiescence] first pronounced in *O'Donnell v. Penney.*"[3] *Id.*

Our review of the law in this area reveals that in some instances when a neighbor claims acquiescence in a boundary line, but the marker for that line is not particularly obvious, then "clear calls" in the abutting neighbors' deed can refute acquiescence. *See* Richard R. Powell, *Powell on Real Property* ¶ 68.05[6][b] at 68–30, 68–31 (Michael Allan Wolf ed.2000). Here, however, the trial justice found that the boundary marked by the arborvitae, the evergreens, and the line of mowed grass was sufficiently obvious to place the Pearsons' predecessors in title on notice. Once he made this finding, the trial justice correctly ruled that the outcome of this case depended not on the conflicting surveys offered by the parties, but on whether they (or their predecessors in title) conducted themselves for a period of at least ten years as though the row of shrubs and evergreens constituted their common boundary. *See Pucino v. Uttley,* 785 A.2d 183, 186 (R.I.2001) ("Like adverse possession, the doctrine of acquiescence to an observable physical boundary line constitutes a recognized means by which a claimant can gain title to real estate encompassed by that boundary line, even though another party clearly possesses record title to that land."). Therefore, we reject the Pearsons' contention that the expert testimony about the boundary line described in the deeds trumped the trial justice's finding of acquiescence because this argument is contrary to our established law in this area.

## II

### Hearsay

■ On appeal, the Pearsons also urge that the trial justice erred when he allowed Ms. Acampora to testify about statements Mr. Card made to her when she and her husband purchased lot No. 19. In essence, she was allowed to testify, over objection, that Mr. Card told her that he planted the evergreens and that the property line extended beyond the tree line. According to the Pearsons, this testimony was inadmissible hearsay and the trial justice committed error when he admitted it under Rule 803(24) of the Rhode Island Rules of Evidence, the so-called "catch-all" exception.[4]

3. *See O'Donnell v. Penney,* 17 R.I. 164, 20 A. 305 (1890).

4. Rule 803(24) of the Rhode Island Rules of Evidence provides:

"A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement

After reviewing the record in this case, we are satisfied that there was no reversible error in allowing this testimony. With respect to the planting of the evergreens, there was other substantial evidence that the trees were in place before the Acamporas purchased lot No. 19. This evidence included aerial photographs of the property that depicted the trees, and Ms. Acampora's earlier testimony that there were trees along the northern side of her property when she acquired it.

■■ Also, it is our opinion that Ms. Acampora's testimony that she had been told that the property line extended a little beyond the trees was not hearsay because it was not offered to prove the actual location of the property line.[5] Rather, it tended to demonstrate her state of mind when she took possession of the disputed portion of lot No. 18 and used it as if it were her own for a period in excess of ten years. *See Wells v. Uvex Winter Optical, Inc.*, 635 A.2d 1188 (R.I.1994).

### III

### Acquiescence and Adverse Possession

When he rendered his decision in this case, the trial justice discussed both acquiescence and adverse possession. The final judgment, however, refers only to acquiescence: "By clear and convincing evidence there was an acquiescence made by both the Acamporas and by the predecessor owners to the Pearsons, for the term of at least ten years or more to that boundary made by the evergreens as well as the arborvitaes * * *." The trial justice ordered that the boundary line between the two lots "shall run down the line of the arborvitaes and then along a line two feet to the north of the evergreens, extending down to Narragansett Bay." We agree with the trial justice that Acampora and the Pearsons' predecessors in title acquiesced in the boundary line created by the arborvitae. We also affirm the trial justice's decision that the area two feet beyond the evergreens belongs to Acampora. However, as will be discussed below, we uphold that part of the judgment on adverse possession grounds. *See Ahlburn v. Clark*, 728 A.2d 449, 452 (R.I.1999) ("Although this Court will consider only those issues that the parties have properly raised and presented at trial * * * we can affirm a judgment on grounds not actually relied upon by the trial court to justify its ruling * * *.").

### A

### The Arborvitae

■ This Court first recognized the doctrine of acquiescence in *O'Donnell v. Penney*, 17 R.I. 164, 20 A. 305 (1890). At that time, we joined a number of other jurisdictions in holding that even when there has been no express agreement, adjoining landowners are "precluded from denying a boundary line recognized by both owners for a length of time equal to that prescribed by the statute of limitations barring a right of reentry." *Locke*, 610 A.2d at 556 (citing *O'Donnell v. Penney*, 17 R.I. 164, 20 A. 305 (1890)). "[A] party alleging acquiescence must show that a boundary

---

may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, his or her intention to offer the statement and the particulars of it, including the name and address of the declarant."

5. A statement is hearsay only if it is offered to prove the truth of the matter asserted. *State v. Mann*, 889 A.2d 164, 166 (R.I.2005) ("On several occasions, we have noted that '[i]t is axiomatic that an out-of-court statement is not hearsay unless it is offered for the truth of the matter asserted.' "). *See also* R.I. R. Evid. Rule 801(c).

marker existed and that the parties recognized that boundary for a period equal to that prescribed in the statute of limitations to bar a reentry, or ten years." *Locke*, 610 A.2d at 556. We have said that recognition of a boundary line can be inferred from the silence of a party, or his predecessor in title, who is aware that it exists. *Id.*

The Pearsons argue that this case differs from our previous cases involving acquiescence because the alleged boundary here was not a fence or some other man-made object, but simply a row of shrubs.[6] *See Locke v. O'Brien*, 610 A.2d 552 (R.I.1992); *Peloquin v. Ciaccia*, 413 A.2d 799 (R.I.1980); *Rosa v. Oliveira*, 115 R.I. 277, 342 A.2d 601 (1975). The Pearsons contend that plantings such as arborvitae are not sufficient to provide notice to an abutting landowner that a boundary line has been set. Indeed, one well-known treatise has said that a party charged with acquiescence must have had "actual notice" of the conditions to which it is claimed he has acquiesced. *Powell on Real Property* ¶ 68.05[5][a] at 68–27. Therefore, "the claimant must prove that the purported boundary has been obvious to the allegedly acquiescing party." *Id.* at 68–28. Generally, "the line must be marked in a manner that customarily marks a division of ownership," *id.*, ¶ 68.05[5][b] at 68–28, and the marker must have been used for boundary purposes. *Id.*, ¶ 68.05[7][c] at 68–31. But, whether the boundary is sufficiently obvious to command notice is a question of

fact, *id.*, ¶ 68.05[5][b] at 68–28, and we give great deference to such a finding by a trial justice sitting without a jury. *See Barone v. Cotroneo*, 711 A.2d 648, 649 (R.I. 1998)(mem.).

The Pearsons contend that the trial justice erred because no evidence was presented that would suggest that the parties intended that the row of arborvitae was to serve as a boundary. However, the record is devoid of any evidence that the plantings served any purpose other than to demarcate the boundary between lot Nos. 18 and 19. Indeed, homeowners often plant shrubs or bushes to mark a division of property in an aesthetically pleasing manner.[7]

In addition, Ms. Acampora testified that her husband planted a row of thirteen or fourteen arborvitae that extended from east to west on the northern edge of their property. She also said that the grass was regularly mowed, fertilized, and maintained to the arborvitae. Members of her family used the disputed area as their own for a variety of outdoor recreational activities. Ms. Acampora also recalled that Mr. Damboise, who owned the abutting lot No. 18 from at least 1989 through 2000, had visited his property and conversed with Acampora and her late husband. During this visit he never objected to the presence of the bushes or the Acamporas' use of the land up to the bushes. Based on this uncontradicted evidence, the trial justice found by clear and convincing evidence[8]

6. We note that although it differed factually from the present case, we held in *DeCosta v. DeCosta*, 819 A.2d 1261, 1265 (R.I.2003), that a hedgerow, which was planted by the owners of adjoining parcels and was treated by both parties as the boundary line between the parcels, was sufficient evidence to trigger the doctrine of acquiescence.

7. *Cf. Chandler v. Hibberd*, 165 Cal.App.2d 39, 332 P.2d 133, 138 (1958) ("The evidence being undisputed does not support the finding of agreed boundary, for the simple reason that the fence was neither agreed upon nor intended *as a boundary* but was considered and understood as only a cattle barrier.").

8. Although the trial justice found acquiescence by clear and convincing evidence, we

that the previous owners had notice of the boundary created by the arborvitae, and through their silence, had acquiesced in the boundary for the statutory period. After a thorough review of the record in this case, we are satisfied that the trial justice was not clearly wrong and did not overlook or misconceive the evidence. Therefore, we affirm his judgment with respect to the boundary marked by the arborvitae to which the landowners acquiesced.

## B

### North of the Evergreens

■ In his bench decision, the trial justice remarked that "the question is whether that exercise of dominion on her [Ms. Acampora's] part along that boundary with the trees, the mowing of the land 10 feet to the north [of the evergreens] on a regular basis * * * the construction of a shed on the so-called 'boundary line,' and the use of that land by herself and her family for recreational activities * * * do all of those activities amount to an adverse possession[?]" The trial justice went on to "refine" this question as one of acquiescence. However, it is our opinion that the ownership of the two-foot strip of land to the north of the evergreen trees should have been resolved utilizing an adverse possession analysis.

■ The General Assembly has codified adverse possession as follows:

"Where any person or persons, or others from whom he, she, or they derive their title, either by themselves, tenants or lessees, shall have been for the space of ten (10) years in the uninterrupted, quiet, peaceful and actual seisin and possession of any lands, tenements or hereditaments for and during that time, claiming the same as his, her or their proper, sole and rightful estate in fee simple, the actual seisin and possession shall be allowed to give and make a good and rightful title to the person or persons, their heirs and assigns forever; and any plaintiff suing for the recovery of any such lands may rely upon the possession as conclusive title thereto, and this chapter being pleaded in bar to any action that shall be brought for the lands, tenements or hereditaments, and the actual seisin and possession being duly proved, shall be allowed to be good, valid and effectual in law for barring the action." G.L.1956 § 34-7-1.

"This Court has long held that to establish adverse possession, a claimant's possession must be 'actual, open, notorious, hostile, under claim of right, continuous, and exclusive' for at least ten years." *Tavares v. Beck,* 814 A.2d 346, 350 (R.I.2003). The onus is on the party claiming adverse possession to establish these elements by clear and convincing evidence. *Id.*

Ms. Acampora testified that after she and her late husband purchased lot No. 19 and moved into the house on the property, they regularly mowed and fertilized the lawn up to twelve feet past the row of evergreens, as the Cards had done before them. They also used the area for recreational activities, such as horseshoes, and placed a shed between two of the evergreens in 1994.[9] We have said that "[f]or adverse possession to occur, the use to which the land is put must be similar to

---

have reviewed our case law and can find no case in which this Court has said that the standard of proof required to establish acquiescence is clear and convincing evidence.

9. There are conflicting accounts in the record of when the shed was built. Some accounts say it was built in 1994, others say it was 1998. The precise date is not material to our disposition of this case, however, because the shed had not been in existence for the statutory period of ten years when Acampora made her claim for adverse possession in 2001.

that which would ordinarily be made by owners of similarly situated real estate." *Beck*, 814 A.2d at 352. This requirement ensures that a claimant's use of the land was "sufficiently open and notorious to put a reasonable property owner on notice of their hostile claim." *Id*. Here, the Acamporas used the disputed property, which is essentially a side yard, as any owner of this residential land would—they cut the lawn, maintained the property, and used it for outdoor activities. Therefore, Acampora's use of the property was both open and notorious.

Acampora also has acted under a claim of right and with the requisite hostility. In *Beck*, we explained that "a claim of right may be proven through evidence of open, visible acts or declarations, accompanied by use of the property in an objectively observable manner that is inconsistent with the rights of the record owner." *Beck*, 814 A.2d at 351. Similarly, "to constitute a hostile use, the adverse possessor need only establish a use 'inconsistent with the right of the owner, without permission asked or given, * * * such as would entitle the owner to a cause of action against the intruder [for trespass].'" *Id*. The Acamporas satisfied these requirements by using the area for their own purposes, in a manner that was inconsistent with their neighbor's record ownership of the land. However, Ms. Acampora conceded that she believed her property extended only "a couple of feet" past the evergreen trees. Therefore, she acted under a claim of right only with respect to an area a couple of feet beyond the evergreens. Accordingly, the trial justice properly determined that the boundary line should extend two feet beyond the trees.

The Pearsons argue that the Acamporas did not plant or at any time maintain the evergreen trees. They cite our decision in *Searle*, 681 A.2d at 898, in which we reiterated our previous statement that " '[c]ulti-

vating land, planting trees, and making other improvements in such a manner as is usual for comparable land have been successfully relied on as proof of the required possession.'" Nonetheless, there was uncontradicted testimony that although the Acamporas did not plant the evergreen trees or maintain them, they did regularly mow and fertilize the grass up to, around, and beyond the trees. We are satisfied that the Acamporas maintained the land in a manner that is usual for the owners of residential property.

Our review of the record also reveals that Acampora's use of the property was actual and exclusive. There were no claims to the land by any other parties and no evidence that anyone besides Acampora and her family used the property. The uncontradicted testimony at trial also demonstrated that Acampora used the land in this manner continuously since she acquired her lot in 1980 until the Pearsons purchased lot No. 18 in 2001. Therefore, her use of the property was actual, open, notorious, hostile, exclusive, and continuous for at least the ten-year statutory period required for adverse possession. After reviewing the record, we affirm the judgment of the trial justice. We are satisfied that his finding of acquiescence with respect to the boundary line established by the arborvitae was not clearly wrong and he did not overlook or misconceive material evidence. In addition, we believe that Acampora established by clear and convincing evidence that she has acquired title to the strip of land two feet beyond the evergreen trees by adverse possession.

## Conclusion

For the foregoing reasons we affirm the judgment of the Superior Court to which we remand the papers in this case.