DECISION
In this boundary dispute filed by Vincenzo J. Ferrante[1] and Betty Jane Ferrante (the Plaintiff) (collectively, the Ferrantes), the Plaintiff contends that pursuant to the doctrine of acquiescence, Defendants Karl J. Russo and Debra A. Russo (the Defendants) are committing a trespass on her property. The Plaintiff seeks this Court to enjoin and restrain the Defendants from maintaining a newly constructed fence and to quiet title by declaring that the proper boundary line between the parties' respective properties constitutes a previously existing fence. The Defendants counterclaimed, seeking treble damages for trees that they allege the Ferrantes destroyed.[2] Jurisdiction is pursuant to G.L. 1956 § 8-2-14.
 I Facts and Travel
The facts in this matter largely are undisputed. The subject adjacent properties originally were located on Belfield Drive in Johnston, and they belonged to decedent Grace Heywood (Ms. *Page 2 
Heywood).[3] On October 2, 1975, she conveyed Assessor's Plat 53, Lot 60, and otherwise known as 39 Heywood Lane, to the Plaintiff and her husband. Thereafter, on October 30, 1980, Michael and Concetta Ferrante conveyed Assessor's Plat 53, Lot 227 to the Plaintiff and her husband. On October 23, 1986, Ms. Heywood conveyed to the Defendants Assessor's Plat 53, Lot 278, and otherwise known as 25 Heywood Lane. At the time that the Plaintiff and her husband purchased their property from Ms. Heywood, there existed a barbed wire fence running from Heywood Lane between the parties' properties.
In 1999, Defendant Karl Russo performed some work in the disputed boundary area after receiving the results of a property survey. Specifically, he replaced the existing barbed wire fence with a new fence that was closer to the Plaintiff's house. Shortly thereafter, the Ferrantes filed the instant action.
A two-day, non-jury trial was conducted on October 7, 2004 (Transcript (or Tr.) I, and on January 21, 2005 (Transcript (or Tr.)II. Four witnesses testified at the hearing: the Plaintiff's expert, Phillip Mancini (Mr. Mancini) (Tr.I at 1-31); the Defendants' expert, Mark D. Boyer (Mr. Boyer) (Tr. I at 31-46); the Plaintiff (Tr. II at 2-20); and Defendant Karl J. Russo (Mr. Russo) (Tr. II at 21-27).
Mr. Mancini, a licensed and registered land surveyor and civil engineer, testified that he performed a survey of the Ferrante's property in 1975. Tr. I at 1-2 and 6. He stated that he observed a wire fence running from Heywood Lane separating the two properties.Id. at 4. In his survey, Mr. Mancini indicated that his survey indicated that the property line consisted of the barbed wire fence. Id. at 10. Mr. Mancini acknowledged that subsequent surveys, one performed by Mr. Boyer and the "Scituate Survey," contradicted his survey in as much as "[t]he wire fence, as I said, is not straight. It's curved. And the line of the surveys done by Raimondo *Page 3 
and Boyer was a straight line." Id. at 11. Mr. Mancini admitted that the deed for the property recorded in the land evidence records indicates a straight line and that it makes no mention of the fence. Id. at 16-17. The discrepancy between the respective surveys constituted "1098 square feet." Id. After discovering the discrepancy, Mr. Mancini changed the angle and distance of the wire-fence line. Id. at 25.
Registered land surveyor Mr. Boyer then testified. Id. at 31. He stated that he conducted a survey in 1998 because "there was a dispute in the water property line between the Russos and the Ferrantes."Id. at 32. Mr. Boyer testified that he reviewed all of the relevant deeds, "the Scituate Survey plans of 1986, the Mancini plan of 1975[, ]" and then conducted fieldwork on the property. Id. at 32-33. Mr. Boyer stated that he observed evidence of an "ancient" barbed wire fence, but he stated that the fence did not run entirely to the property line and was not evidenced in the deeds on record. Id. at 36. Mr. Boyer concluded that the property line between the parties was straight. Id. at 35.
The Plaintiff testified next. She testified that she and her husband had lived next door from Mrs. Heywood since 1965. Tr. II at 6. The Plaintiff stated that the purpose of the fence was "to keep cattle on their property. And to separate our property from theirs. So the cattle couldn't get out." Id. at 5. She further testified that over the years, she and her husband would repair and replace parts of the fence.Id. The Plaintiff stated that she and her husband had maintained the fence "to protect our property, if the cattle happened to get out. . . ." Id. at 6. In 1999, Mr. Russo replaced the old fence with a new one that she said encroaches on her property by several feet. Id. at 15. The Plaintiff testified that she and her husband used the disputed property "as a driveway to get back to the property that runs along the back."Id. She later admitted that part of the disputed area was an unused wooded area. Id. at 18. *Page 4 
Mr. Russo testified that there was a "worn down" barbed wire fence on the property when the Defendants purchased it in 1986 from Mrs. Heywood.Id. at 21-22. Mrs. Heywood was Defendant Debra Russo's grandmother.Id. at 7. In response to the question, "What was your understanding of the [barbed wire] fence when you acquired the property?" Mr. Russo stated "Just to keep the cattle on the farm." Id. He described the fence as going "from tree to tree." Id. Mr. Russo stated that one day he noticed that the Ferrantes had been filling in part of the disputed area, and he asked them to stop, which they did. Id. at 23-25. Mr. Russo removed the fill, and later hired Mr. Boyer to stake out the boundary line. Id. at 25-26. Mr. Russo then erected a new fence along the staked boundary line. Id.
At the conclusion of the non-jury trial, the parties submitted post-trial memoranda in lieu of closing arguments.[4] After carefully reviewing the evidence and the memoranda of counsel, this Court will now issue its Decision.
 II Standard of Review
Rule 52 of the Rhode Island Superior Court Rules of Civil Procedure governs non-jury trials, and provides that "[i]n all actions tried upon the facts without a jury . . . the court shall find the facts specially and state separately its conclusions of law thereon. . . ." R.I. Sup. Ct. R. Civ. P. Rule 52(a). Accordingly, "the trial justice sits as the trier of fact as well as of law." Hood v. Hawkins, 478 A.2d 181, 184
(R.I. 1984). A trial justice's finding of fact will not be disturbed "unless such findings are clearly erroneous or unless the trial justice misconceived or overlooked material evidence or unless the decision fails to do substantial justice between the parties." Opella v.Opella, 896 A.2d 714, 718 (R.I. 2006) (quoting Bogosian v.Bederman, 823 A.2d 1117, *Page 5 
1120 (R.I. 2003)). Furthermore, although the trial justice is required to make specific findings of fact, "brief findings and conclusions are sufficient if they address and resolve the controlling and essential factual issues in the case." Donnelly v. Cowsill, 716 A.2d 742, 747
(R.I. 1998)).
Determining acquiescence constitutes "a mixed question of law and fact." Acampora v. Pearson, 899 A.2d 459, 462 (R.I. 2006) (citingLocke v. O'Brien, 610 A.2d 552, 556 (R.I. 1992)). A trial justice's finding of acquiescence will be disturbed "only in the limited circumstances where he [or she] is clearly wrong or overlooked or misconceived material evidence." Id.
 III Analysis
The Plaintiff contends that the wire fence separating the subject properties constitutes the boundary line between the two properties by operation of law and fact. Specifically, she alleges that regardless of any language in the deed to the contrary, the Defendants and their predecessors-in-interest acquiesced in the boundary established by the wire fence for more than the ten-year statutorily-prescribed time period.
The Defendants counter that there was no credible evidence to support the Plaintiff's assertion that the parties had agreed to the wire fence as the boundary line. Indeed, the Defendants assert, the credible expert testimony and surveys demonstrated the actual boundary line conformed to the line described in the Plaintiff's deed. They further contend that had Mrs. Heywood "intended to acquiesce in the use of a barbed wire fence as the boundary line, the deeds she used to describe the property being conveyed would have made reference to that barbed wire fence."Defendants' Memorandum of Law at 3.
It is axiomatic that "the doctrine of acquiescence to an observable physical boundary line constitutes a recognized means by which a claimant can gain title to the real estate encompassed *Page 6 
by that boundary line, even though another party clearly possesses record title to that land." Pucino v. Uttley, 785 A.2d 183, 186 (R.I. 2001). Under this doctrine, even in the absence of an express agreement, "adjoining landowners are `precluded from denying a boundary line recognized by both owners for a length of time equal to that prescribed by the [ten year] statute of limitations barring a right of reentry.'"Acampora v. Pearson, 899 A.2d 459, 464 (R.I. 2006) (quotingLocke, 610 A.2d at 556). Indeed, the "recognition of a boundary line can be inferred from the silence of a party, or his predecessor in title, who is aware that it exists." Id.
By and large,
 "a party charged with acquiescence must have had `actual notice' of the conditions to which it is claimed he has acquiesced. Therefore, `the claimant must prove that the purported boundary has been obvious to the allegedly acquiescing party.' Generally, `the line must be marked in a manner that customarily marks a division of ownership, `and the marker must have been used for boundary purposes. But, whether the boundary is sufficiently obvious to command notice is a question of fact. . . ." Acampora, 899 A.2d at 465. (Internal citations omitted.)
Great deference is given to such a finding where a trial justice sits without a jury. See id. Furthermore, the question "is not whether [a] plaintiff establishe[s] his [or her] claim of acquiescence with certainty, but whether he [or she] showed a reasonable probability of succeeding on that claim." Pucino, 785 A.2d 187
In the instant matter, the undisputed facts demonstrate that Mr. Mancini's 1975 survey of the boundary line contradicted that which was delineated by the deed. Nevertheless, the mere fact that the boundary established by the deed differed from the fence line does not establish necessarily that the deed is the proper measure of the boundary line. If the Plaintiff demonstrated that the Defendants had acquiesced in the wire fence as the boundary line for a period of ten years, then the fence would constitute the boundary line. See id. at 463 (stating that *Page 7 
after finding a particular line was sufficiently obvious to provide notice of said line, the trial justice "correctly ruled that the outcome of this case depended not on the conflicting surveys offered by the parties, but on whether they (or their predecessors in title) conducted themselves for a period of at least ten years as though the row of shrubs and evergreens constituted their common boundary").
In this case, although the Ferrantes may have repaired the fence over the years, and although they may have used a portion of the disputed property to access the back of their property, the Plaintiff admitted that the actual purpose of the fence was to contain the Defendants' cattle. Indeed, she even admitted that the reason that they had maintained the fence was to protect their property from the cattle. Mr. Russo also testified that the purpose of the fence was to keep the cattle on the farm. Consequently, the record reveals that the parties treated the fence as a cattle barrier rather than as a boundary line.See Acampora, 899 A.2d at 465 n. 7 ("The evidence being undisputed does not support the finding of agreed boundary, for the simple reason that the fence was neither agreed upon nor intended as a boundary but was considered and understood as only a cattle barrier.") (quotingChandler v. Hibberd, 165 Cal.App.2d 39, 332 P.2d 133, 138 (1958)).
 IV Conclusion
For the foregoing reasons, the Court concludes that the Plaintiff failed to show with a reasonable probability any chance of success on her claim when she admitted in open Court that the disputed fence constituted a cattle barrier. See Acampora, 899 A.2d at 465 n. 7. Consequently, the proper boundary between the properties is delineated by the Plaintiff's deed. Judgment is in favor of the Defendants. *Page 8 
Counsel shall prepare an order consistent with this decision.
[1] Since the filing of this lawsuit, Vincenzo J. Ferrante passed away. On January 21, 2005, counsel for the Plaintiffs made an oral Motion to Amend the Pleadings, pursuant to Super. R. Civ. P. 15, in order to remove Mr. Ferrante as a party. The Court grants the motion and has revised the caption to reflect the change. See Catucci v.Pacheco, 866 A.2d 509, 513 (R.I. 2005) ("[T]he decision about whether to permit a party to amend his or her pleading is one that is left exclusively to the sound discretion of the trial justice and [will not be disturbed] unless it constitutes an abuse of discretion.")
[2] At trial, the defendants did not press their counterclaim, and they produced no evidence of their alleged damages.
[3] Belfield Drive later was renamed Heywood Lane
[4] The Court observes that the Plaintiff filed her post-trial memorandum on June 9, 2006. The Defendants filed a responsive memorandum on March 14, 2007. *Page 1