DECISION
In this action to quiet title, the parties remaining dispute concerns the ownership of a "grassy strip" of land owned by Carol Makowski and Robert R. Natale (the defendants), and a cement extension to a driveway accessing plaintiffs' property in the City of Cranston, Rhode Island. This matter was tried before this Court without a jury. The parties each submitted their "proposed findings of fact".
Plaintiffs, John J. Bert and Teresa C. Bert (the Berts) commenced this action, seeking to quiet title concerning a dispute over the ownership and control of a portion of the driveway that provides access to the Berts and one half of the grassy strip of land which exists between the driveways which service the Berts and the defendants' property. The Berts complaint seeks to quiet title under two distinct legal theories either an easement by prescription or adverse possession.
The defendants are the record owners of the disputed land situated on Lot 1793 on City of Cranston Tax Assessor's Plat 2/3. The defendants' property is east of the property owned by plaintiffs. The Berts are the record owners of land situated on Lot 1792 on City of Cranston Tax Assessor's Plat 2/3. In their amended complaint the Berts sought a *Page 2 
judicial declaration concerning a portion of the driveway that services their property. Defendants conceded that with the exception of a triangular addition to the driveway closer to defendants' property (see Plaintiffs' Exhibit 3, full), that the Bert's now own the other portion of the driveway shown on the land survey in Plaintiffs' Exhibit 2, Full) by adverse possession.
 FACTS AND TRAVEL
The testimony and evidence introduced at trial establishes the following. The defendant Carol Makowski purchased her property in 1984. After buying her property initially she did not live at the property. Makowski testified at the time she purchased her property she asked the realtor where the property line was. Makowski further testified she was told by the realtor she owned the entire center grass strip. Makowski testified although she spoke to her realtor about where the property line was she admitted she did not know where the "true property line was".
When Makowski purchased her property the Berts' property was owned by the Caseys. Makowski testified while she and the Caseys were owners of these adjoining pieces of land there never was any discussion between them about the ownership of the center strip. Makowski testified the Martins were the next owners in succession of the Bert property. According to Makowski the Martins did not do any work on the grassy strip because of their age. Instead the Martins hired Dan Cyr to do the landscaping.
Makowski testified she cut all the grass in the center strip until she hired a landscaper, Dan Cyr, who only cut the lawn. Makowski testified that her then future husband Robert Natale, watered, fertilized and addressed other needed issues on the entire grass strip. Natale's memory on this point was less clear than the claimed memory *Page 3 
of Makowski. Natale testified that he may have helped her cut the grass previous to that time. Makowski moved into her house during the spring of 1989.
The Berts purchased their property in August, 1989, and moved in shortly afterward.[1] When they first moved into their home the Berts believed their property line, included their entire driveway and half the grass strip. After both parties began physically occupying the adjoining parcels of land, they met each other and enjoyed an amicable relationship for many years. John Bert testified that shortly after moving into his property, within the first two to three months, because it was not clear where the property line was in the grassy strip, he spoke with Carol Makowski. Makowski, according to John Bert, advised him the property line ran down the center of the grassy strip. Makowski denied having this discussion with either John or Carol Bert.
Makowski testified that early in the relationship she and Teresa Bert were very involved in gardening and jointly made the decision about a cobblestone path running across the grassy strip between the parcels, and mulching areas of the center strip. Makowski further testified that one year the Berts' landscaper would be responsible for mulching, and the next year she and Natale would be.
In 1991, at the latest the parties agree, because of some erosion caused by water to the southwestern portion of the grass strip, the Berts caused a cement extension to be installed to the eastern edge of their driveway. The Berts deny they ever sought permission from the defendants to add this extension. Makowski testified that because of the problem with erosion, she spoke with Teresa Bert. According to Makowski, Teresa Bert asked for and Makowski gave permission to "temporarily" put in the cement *Page 4 
extension because at the time they were friends, and she had no immediate plans for future landscaping of the grass strip.
The parties initially shared the services of a landscaper (Cyr) who cut the entire grass strip; however the Berts paid what they understood to be for half of the grass strip. Later, according to the Berts after the shared landscaper no longer provided his services, they engaged a new landscaper (Saccoccia) to work on the property. The Berts claimed they never sought nor received any permission from the defendants for this work to take place. The new landscaper would cut the grass, do fall and spring cleanups, apply lime and fertilizer, and lay down mulch. In addition to cutting the Berts' portion of the grassy strip, the landscaper would cut the entire grassy strip as a courtesy, so that the grassy strip would not "look funny". Saccoccia worked on the property for the Berts for three years from 1991-1993.
From 1994 until 1997 the parties jointly hired another landscaper (Rainone) who provided similar services as the prior landscaper. Makowski testified that at one point the Berts asked for and received permission to allow their landscaper (Rainone) to cut the entire center strip because Natale was cutting their half on a different day, and the Berts wanted the strip to always look nice. Makowski further testified she ceased using Rainone because she and Natale had a problem with him. According to Makowski, she and her husband performed thatching, fertilizing, watering, planting, cutting and edging the lawn when there were no hired landscapers doing the work and this definitely took place during 2000.
Rainone testified he was instructed by the Berts to maintain their half of the grassy strip. Rainone further testified the defendants never questioned the Berts' *Page 5 
ownership of the grassy strip. Rainone further testified there were times he showed up to cut the lawn but a portion (closer to the defendants' property), was already cut and he cut the remainder. Other times none of the grassy strip was cut and he cut the entire grassy strip. With the approval of the parties, this landscaper, in addition, built a cobblestone pathway across the grassy strip from the Berts' side to the defendants' side. The Berts claim that the defendants never questioned the Berts' right to lay a portion of the pathway on what was thought to be the defendants' property. The parties shared the expense for this pathway to be laid.
Makowski testified that at one point the Berts asked for and received permission to allow their landscaper (Rainone) to cut the entire center strip because Natale was cutting their half on a different day, and the Berts wanted the strip to always look nice. Makowski further testified she ceased using Rainone because she and Natale had a problem with him. According to Makowski, she and her husband performed thatching, fertilizing, watering, planting, cutting and edging the lawn when there were no hired landscapers doing the work and this definitely took place during 2000.
Beginning in 1997 Rainone worked only for the Berts. At that point Rainone would cut only three quarters of the grassy strip as the other portion, at times, was already cut.
In 1999 the Berts hired yet another landscaper (Alexander). Like the prior landscapers, Alexander's job was to do spring and fall cleanups, mulch the beds and trim shrubs. Before beginning, Alexander had a conversation with Teresa Bert. Teresa Bert advised that roughly half the grassy strip was their property. Alexander, on his own without any instructions from the Berts, at times cut the entire grass strip until 2002. *Page 6 
Alexander testified around 2002 he was told by Carol Makowski not to cut any grass on the strip because it was their property. In the late 1990's the amicable relationship the parties shared "deteriorated" (Tr. page 37, line 25).
In 2002, when the Berts considered putting in a fence separating a portion of the parties' property, they commissioned a survey, (Plaintiffs' Exhibit 2, full; Defendants' Exhibit J, full). After the survey was complete the Berts' claimed they were "surprised" as to what the survey revealed. Makowski testified she watched the progress of the survey from her second floor window. Makowski was also surprised as to what she observed. The survey revealed that part of the Berts' driveway (from ".28'" to "2.88'", see Defendant's Exhibit J, full), as well as a majority of the grassy strip, belonged to the defendants. Additionally the survey revealed the grassy strip at the back of the property was several feet wide while at the front of the property it was a few feet wide.
When advised of the outcome of the survey the defendants were unwilling to agree to a resolution. This law suit resulted from the inability of the parties to resolve their dispute.
 The Adverse Possession Claim
R.I.G.L. § 34-7-1 provides that a person claiming title to land through adverse possession must have maintained "uninterrupted, quiet, peaceful and actual seisin" of that land for a period of ten (10) years. A claimant must show by strict proof that the possession was "actual, open, notorious, hostile, under the claim of right, continuous, and exclusive" for the statutory period of ten years." DeCosta v.DeCosta, 819 A.2d 1261, 1264 (R.I. 2003) (citing Carnevale v.Dupree, 783 A2.d 404, 409 (R.I. 2001)). The term "strict proof" means that the claimant must prove each of these elements by clear and convincing evidence. Id. Clear and convincing evidence means that the claim is highly *Page 7 
probable as opposed to just that it is more likely than not. Each adverse possession case depends on individual facts and unique circumstances surrounding it. Dodge v. Lavin, 34 R.I. 514, 518-19,84 A. 857, 858 (1912).
As a starting point this Court must first determine whether the Berts proved they have possessed any of the disputed property for the statutory period of ten (10) years as set forth in Rhode Island General Laws Section 34-7-1 before initiating this suit.
Plaintiffs' Exhibit 1 establishes conclusively that plaintiffs became the record owners of land situated on Lot 1792 on City of Cranston Tax Assessor's Plat 2/3 as of August 1, 1989. Further the uncontradicted testimony of the Plaintiffs establishes they have been in continuous possession of the land since shortly after they acquired it. This action was commenced March 5, 2003, more than ten (10) years after plaintiffs first possessed that small portion[2] of defendants' property on plaintiffs' paved driveway providing access to the rear portion of plaintiffs' property. Further no evidence was offered by defendants contesting plaintiffs' ownership of this piece of property. This Court declares plaintiffs own that part by adverse possession.
In addition to the above piece of property plaintiffs claim they own an additional piece of defendants' property (the triangular cement patch) to address the erosion problem. Although plaintiffs deny asking Makowski or Natale permission to add concrete to address the erosion problem, Makowski testified that Theresa Bert asked for and was given "temporary" permission to put concrete in the area. Plaintiffs testified they used this property exclusively as their own property for more than ten years. Defendants dispute that claim. Both defendants testified that on some occasions while leaving the front of their property in their vehicle, they would drive "over my grass strip and onto *Page 8 
that piece of cement". Defendant Makowski could not exactly recall how many times she claimed to do this; however she estimated she did so "a few dozen times" over the course of the years. Defendant Natale claimed to have driven over that piece of property, but did not testify as to when he did so or his frequency doing so.
To support their claim to this area plaintiffs must prove their claim by strict proof. Although the testimony on this point was conflicting, this Court is satisfied that plaintiffs have met their burden for this claim. Although the testimony is disputed the Court finds as follows: Theresa Bert asked Carol Makowski for permission to put the concrete patch in, and Carol Makowski did not object; the survey established the area where the concrete patch was placed actually belonged to defendants; the Court finds the defendants' claim to have occasionally driven over that area, arguably to interrupt the "continuous" element or to defeat the "exclusive" elements not worthy of belief. Neither defendant was able to recall with any degree of precision when they used this portion of the disputed piece of land. Although plaintiffs have the burden of proof on their claim, defendants cannot be allowed to offer testimony unsupported by any other evidence to defeat plaintiffs' claim. Plaintiffs have proved they continued to use the area exclusively both before and after the installation of the concrete patch for more than ten years. This Court rules that plaintiffs own that part of defendants' property by adverse possession.
As to plaintiffs' adverse possession claim of the remaining half of the grassy strip the evidence is less clear. There was conflicting testimony from all of the witnesses as to which party, or which parties' agents, maintained the grassy strip during the period between 1992 and the time when the survey was performed. For example although plaintiffs maintained their agents would rake leaves off the grassy strip, Makowski, when *Page 9 
asked on cross examination to explain why the leaves appeared on approximately one half of the grassy strip in Plaintiffs' 6 Full exhibit, opined that "in the neighborhood they live in where the wind blows through our yard and the wind blows the leaves from our front yard almost completely out of our yard, and evidently the wind is responsible for blowing these leaves . . . " and leaving them where they appear rather than defendants' raking the leaves on their side of the grassy strip.
Plaintiffs and defendants testified that during that period they jointly placed a decorative bench across a portion of the grassy strip; that Theresa Bert and Carol Makowski used a lower portion of the grassy strip to display respective items for sale at jointly conducted yard sales.
If the Court were to accept fully as credibile the testimony of plaintiffs and their witnesses on the issue of maintenance of the grassy strip, that evidence still would not satisfy the high burden of proof that is required. Based upon the testimony and the exhibits introduced, this Court cannot say there was a clear boundary line established by plaintiffs to demark the land they claim ownership of under either theory easement by prescription or adverse possession. cf. Acampora v.Pearson 899 A.2d 459, 464 (R.I. 2006).
Based upon the evidence produced, this Court cannot say that the plaintiffs' claim to the middle of the grassy strip was adversely possessed because the evidence does not clearly and convincingly prove actual, open, notorious, hostile, under the claim of right, continuous, and exclusive possession for the statutory period of ten years. Plaintiffs claim under the doctrine of adverse possession is denied. *Page 10 
 EASEMENT BY PRESCRIPTION
An easement is defined as "[a]n interest in land owned by another person, consisting in the right to use or control the land, or an area above or below it, for a specific limited purpose." Black's Law Dictionary 414 (7th ed. 2000). An easement by prescription is specially defined as "[a]n easement created from an open, adverse, and continuous use over a statutory period." Id. at 416. Our Supreme Court has explained that "[o]ne who claims an easement by prescription bears the burden of establishing actual, open, notorious, hostile, and continuous use under a claim of right for at least ten years." Stone v. Green HillCivic Ass'n, Inc., 786 A.2d 387, 389 (R.I. 2001). Further, "[t]he determination of whether or not a claimant has satisfied the burden of proving each of these elements by clear and satisfactory evidence involves an exercise of the fact-finding power." Id. at 389-390.
For the same reasons this Court cannot find for plaintiffs on their adverse possession claim, this Court also cannot find for plaintiffs on their easement by prescription claim.
In conclusion, the Berts proved their possession of both the driveway and the triangular addition by either adverse possession or easement by prescription. The Berts failed to prove they possessed half the grassy strip by either adverse possession or by easement by prescription.
Counsel for the prevailing party shall submit an Order consistent with this Decision.
[1] Neither party in this matter engaged a land surveyor prior to purchasing their respective property to determine the true boundary line.
[2] This area does not include the disputed triangular addition to Plaintiffs' driveway. *Page 1